IN

# THE SUPREME COURT

OF .

# PENNSYLVANIA.

WESTERN DISTRICT, PITTSBURGH, 1852.

## McDonald *versus* Todd.

Grant.
1g  17
184  178

1. If the sheriff brings money into court, pursuant to the command of his writ, his act is official, and an end to his responsibility.

2. If the sheriff pays money, made on an execution, to the party, instead of bringing it into court, his act, in so doing, is unofficial and informal, and he can neither be protected nor prejudiced by his office in so doing.

3. Where a plaintiff, in an execution, procures the improper payment to himself, of money made from the sale of real estate, by falsely representing to the sheriff that his judgment is the first lien, it may be recovered back.

4. An attorney, who has obtained judgment for his client, continues to be his agent in the collection of the money.

5. The fraud of an agent or sub-agent, in the management of the business, affects his principal as if it were his proper act.

ERROR to the Court of Common-Pleas of *Cambria county*.

The facts appear in the opinion of the court, delivered in 1852, by

GIBSON, J.—The assignment of error indicates that the defence was put on the supposed official character of the plaintiff's mis-payment, as sheriff; and of his means of ascertaining the fact, which was the basis of it. But that it was unofficial, appears by the exigence of the writ, which was to have the money before the judges at the return day. In contemplation of law, money made on an execution, is theoretically in court; though it is seldom actually there, except where it has been ruled in, and then the party entitled to it has leave to take it out. In an English court there is no contest for the ownership; for the money is ad-

VOL. I.—2

[McDonald *v.* Todd.]

judged to him on whose execution the property was sold, and without regard to priority—the remedy of an injured execution creditor being an action against the sheriff for the false return of *nulla bona;* in other words, according to *Bradley* v. *Windham,* 1 Wils. 44, for selling on the wrong execution.   In nothing, however, does the practice of that country and this, differ more strikingly than in regard to an execution in the sheriff's hands. There the sheriff goes by the mandate of his writ, and the court hears no more of his doings until he returns; here, the court superintends the execution of it, by receiving motions to set aside a levy, or an inquisition, or a sale, or by correcting any other irregularity.   There, he acts at his peril; here, he is put on his path again when he has strayed from it; and since the foundation of the province, the practice has been to sell on all the executions in his hands at the time, leaving the responsibility of distribution to the court, as if the executions were liens on the money, and thus relieving the sheriff, with reasonable care on his part, from all risk whatever.   And this practice, so far as the distribution of money is involved, has the sanction of a comparatively recent statute, by which it is established and regulated.   Now, had the plaintiff had the money before the judges pursuant to the command of his writ, his functions in paying it into court would have been official, and there would have been an end to his responsibility. But in order to prevent delay and save the expense of cumbrous forms, it has been usual, where the right to the money is not disputed, to pay it immediately to the creditor supposed to be entitled to it, and to retain the execution.   In such a case, however, the payment is private, unofficial and informal; and when the sheriff has departed from the line prescribed by his writ, he acts on his own responsibility.   He discards its authority, which consequently gives no further stamp to his act.   In regard to acts without the pale of it, he can neither be protected nor prejudiced by it.   If he sells the goods of a stranger by color of an execution, he is an ordinary and defenceless trespasser.   An executor or an administrator sometimes pays legacies or distributive shares without an account or a decree; but no one would think his payment official to bar the correction of a mistake. "The only payment by which a party is bound," says Mr. Justice Buller, in *Malcom* v. *Fullerton,* 2 Term R. 648, "is that which is made *into court; that* is a payment of *record,* and the party can never recover it back again, though it afterwards appear that he paid it wrongfully ; but that does not extend to payments between party and party."   Now, instead of thus disburthening himself of the money with its responsibilities, the plaintiff made himself a party to an irregular, though a usual transaction, by dealing with it as a stakeholder; and it cannot be said his wrongful payment of it was a payment of record.

The question then comes to this : was payment of the defendant's judgment procured by misrepresentation of the state of the liens? If it was not, it may be retained; if it was, the defendant cannot retain it with a clean breast. It would not be competent for him to say that "having the means of detection in your hands, you ought not to have believed my agents; but as the trick has succeeded by your overweening confidence, there is an end of the matter." It is scarcely necessary to say, that an attorney who has obtained judgment for his client, continues to be his agent in the collection of the money; and that the fraud of an agent or a sub-agent, in the management of the business, affects his principal as if it were his proper act. And as the question of fraud was left to the jury, what we have to do is to determine whether there was evidence to enable them to entertain it. The attorney testified that he told the plaintiff he thought the first judgment was paid, or nearly so, but that he could get more light on the subject from the judgment creditor. But another witness testified, that when the attorney claimed the amount of the defendant's judgment, the plaintiff said it might be necessary to have an auditor to ascertain the priority of the liens; that the attorney replied that it would unnecessarily tie the matter up and create expense; and that the defendant's judgment was the first lien; and that the plaintiff then said, that if such were the fact, he would pay the money immediately. The jury was therefore properly instructed, that if there was such a representation, the plaintiff would be entitled to recover.

Judgment affirmed.