# Clark *versus* Trindle *et al.*

1. In the 6th section of the Act of April 22d 1856, the expression "with right of entry," means that if there be neither entry nor possession taken by the party in whose favour the trust results, within five years after it accrues, and no acknowledgment in writing, the trust cannot be asserted against the trustee.

2. Entry is a lawful remedy by act of the party; it is equal to livery of seisin, or to a possession essential to a parol sale of lands. It is referable to nothing but title under the trust and in execution of it.

3. Every possession where there is title is supposed to be in subordination to it; it is notice of it to all the world; most clearly so to the trustee.

4. A case where the *cestui que trust* has possession during the period in which the statute is running, is not within the words of the statute or the mischief to be prevented.

5. If possession preceded the trust relation, the statute would not begin to run; it would be *entry*.

6. Miller *v.* Franciscus, 4 Wright 341, qualified.

7. When both parties claim under a common source of title, neither need go farther back than such title.

8. A record having been destroyed, a witness offered to prove its contents was improperly rejected.

9. The entry of a mother as a member of and with the family of which her son was one, was not an entry under colour of title, so as to be a starting-point for the running of the Statute of Limitations; it could not run against the son without ouster and exclusive possession.

ERROR to the Court of Common Pleas of *Franklin county*.

This was an action of ejectment, commenced April 2d 1863, by Elizabeth I. Trindle and Samuel B. Doyle against Mary Ann Clark, for two undivided sixths of a tract of 61 acres of land. The plaintiffs were a child and grandchild of Elizabeth Clark, deceased, and the defendant the widow of Samuel, a son. The legal title of the tract was in Elizabeth Clark, by virtue of a sheriff's deed to her dated April 10th 1837. She lived on it until her death in January 1846: the rest of her family were with her, Samuel being much away from home as a wagoner. After his mother's death Samuel married, and the family continued to live there as before, till his death in 1862, his widow and only child, a minor, being in possession at the bringing of

[Clark *v.* Trindle.]

this suit. It was alleged by the defendant that it was bought with Samuel's money and for him, that he exercised acts of ownership over it and had actual and exclusive possession, and that the equitable title to the whole was in him. The plaintiffs, on the contrary, claimed, that the beneficial as well as the legal title was in his mother at the time of her death. There was evidence as to both these positions.

On the trial before King, P. J., the plaintiffs offered the sheriff's deed, which was objected to by the defendant, on the ground that there was no title shown in the persons as whose property the land had been sold. The evidence was admitted, and exception taken.

The defendant offered to prove by a witness, the receipt on the record of a judgment, the records having been destroyed by fire. The offer was objected to, the evidence rejected and an exception taken.

The plaintiff submitted these points:—

1. If there was a resulting trust in favour of Samuel Clark at all, it began in 1837, at the date of the deed from Sheriff Burns to Elizabeth Clark. And Samuel Clark at that time being under no statutory disability, and having lived more than two years after the passage of the Act of 1856, without having asserted the trust in the manner required by that act, he was barred by the act.

2. That there was no such exclusive possession of the land in dispute, by Samuel Clark, as will take the case out of the bar of the Statute of 1856, or that was sufficient to give him title under the Statute of Limitations.

3. That if there was a joint occupation of the land in dispute by Elizabeth Clark, Samuel Clark, and other members of the family, until the death of Elizabeth Clark in January 1846, the plaintiffs are entitled to recover.

4. That as Elizabeth Clark went into possession of the land under colour of title, there must be adverse, continued, exclusive, uninterrupted and hostile possession in Samuel Clark for twenty-one years, before the defendant can claim to hold the land under the Statute of Limitations.

The court affirmed the 1st point.

In answer to the other points the court said: " The 2d point embraces two propositions, one of which has been met in the answer to the 1st point. The second proposition asserts that there is not sufficient evidence of such exclusive possession as will confer title under the Statute of Limitations. In order to entitle the defendants to hold the land under this statute, they must show to the satisfaction of the jury, that they, and Samuel Clark under whom they claim, have maintained an actual, continued, visible, notorious, distinct and hostile possession of the land in dispute for at least twenty-one years before the commencement of this action.

[Clark *v.* Trindle.]

\* \* \* There is conflicting evidence on this point, and you must reconcile it if possible; and if that cannot be done, it is your duty to determine how the fact is, as best you can. We have only to say further, in this connection, that each characteristic of the possession, as we have stated them, must be established to authorize a verdict for the defendants.

"It is said that Samuel Clark, if in possession, was only a tenant in common with the other heirs of his mother, Elizabeth Clark. Should you find this to be the fact, it would put an end to the defence under the Statute of Limitations.

"3d point. If you find the facts to be as assumed in this point, we affirm the proposition.

"4th point. We affirm this point.

"In conclusion, we repeat, that the defendants are concluded by the Act of 1856 from alleging the existence of a resulting trust, and you must, therefore, settle and determine this case on the two questions of fact submitted to you.

"First, was there such possession by Elizabeth Clark, under and in pursuance of the sheriff's deed, as rendered it unnecessary for the plaintiff to show title out of the Commonwealth ? And, secondly, have the defendants made a successful defence under the Statute of Limitations ? "

There was a verdict for the plaintiffs.

The rulings on the admission of evidence, and the answers to the plaintiffs' points, were assigned for error.

*Kennedy, 'Clarke* and *Cessna,* for plaintiffs in error, cited Lynch *v.* Cox, 11 Harris 265 ; Beck *v.* Graybill, 4 Casey 66.

*F. M. Kimmell* and *J. McD. Sharpe,* for defendants in error, cited Riddle *v.* Murphy, 7 S. & R. 230 ; Patton *v.* Goldsborough, 9 S. & R. 47 ; Cook *v.* Nicholas, 2 W. & S. 28 ; Turner *v.* Reynolds, 11 Harris 199 ; Green *v.* Kellum, Id. 258 ; Shumway *v.* Phillips, 10. Id. 151 ; Lair *v.* Hunsicker, 4 Casey 115 ; McCall *v.* Neely, 3 Watts 69 ; Miller *v.* Franciscus, 4 Wright 335.

The opinion of the court was delivered, June 25th 1866, by

THOMPSON, J.—The main question to be determined in this case is, whether the court below were right in their answer to the plaintiffs' 1st point, which reads as follows :—

"If there was a resulting trust in favour of Samuel Clark at all, it began in 1837, at the date of the deed from Sheriff Burns to Elizabeth Clark. And Samuel Clark at that time being under no disability, and having lived more than two years after the passage of the Act of 1856, without having asserted the trust in the manner required by the act, he is barred by the act." This the learned judge answered in the affirmative.

[Clark *v.* Trindle.]

Thus we have the assertion, " pure and simple," that under all circumstances, a party to whom a trust results from a contract not evidenced by writing, must proceed within five years to compel a conveyance of the legal title, or be for ever barred from setting up his equity against such title. We are to inquire whether this is the true import of the Act of 1856.

Reading that portion of the section especially applicable to this question, stripped of all verbiage excepting that belonging to the limitation in the case in hand, the view seems clearer as to what was meant by the legislature in regard to it. It will then read, that " no right of entry shall accrue or action be maintained * * * * to enforce any implied or resulting trust, as to realty, but within five years after * * * * such equity or trust accrued with right of entry, unless such * * * * trust shall have been acknowledged by writing, to subsist, by the party to be charged therewith, within the same period."

The words " with right entry" at the end of the clause I esteem as material to be considered in construing it. The expression evidently means, I think, that, if there be neither entry nor possession taken by the party, in whose favour the trust results, within five years after it accrues, and no acknowledgment in writing, the trust cannot thereafter be asserted in law against the trustee. It means this or nothing, and we may not urge the latter, if the words are susceptible of a definite meaning. We are bound so to construe statutes, that every part shall be operative rather than inoperative, *ut res magis valeat quam pereat.*

Entry is regarded as a legal remedy, and under the doctrine of remedies it is denominated remedy by act of the party. It must have been so considered in this connection, or rather as a step in the execution of the trust. Well might it be. It is equal to livery of seisin or to the possession necessary to and essential to a complete parol sale of lands. It could not be referred to anything but title, under and pursuant to the trust, and consequently in execution of it. This would undoubtedly be the presumption in regard to the possession by the *cestui que trust.* Every possession, where there is title, is supposed to be in subordination to it. It is notice of title to all the world, and most clearly so to the trustee. If the statute was intended to bar stale and secret claims against legal titles, as it undoubtedly was, it is wide of that purpose to apply it to cases in which, as between the parties, it is neither; but in a state of execution daily and hourly, as must be the case where possession and enjoyment is in exact accordance with the trust. There is enough for the statute to operate upon in cases fitted for it, where no step towards the execution of the trust has been taken. There the presumption accords with the statute, namely, that after five years without any movement by the party interested in the execution of the trust, to have it executed

[Clark *v.* Trindle.]

or properly declared, that no such trust exists, or that it has been abandoned or relinquished in some way to the holder of the legal title. It is only in this view that the statute can be just. We think that neither in the words nor by interpretation founded on the mischief to be prevented by the statute, is a case within it, where the *cestui que trust* has possession and occupancy during the period in which the statute is running. If the statute had begun to run, this would stop it. If possession preceded the trust relation, it would not begin to run. This would be entry, the party would not be required to turn out and re-enter. The law does not require the performance of vain things: Hamilton *v.* Elliot, 5 S. & R. 375.

In the case at bar the learned judge applied the statute to a case of possession in the ancestor of the defendant, alleged to have begun and continued for nineteen years before the passage of the act, and since by him and his heirs until suit brought in 1863. This was what the defendant claimed was her case, and for the purposes of this decision we must take it as true, for to this alleged state of facts the ruling of the learned judge was in substance and effect:—

"It is no matter; the defendant was obliged, notwithstanding her possession, occupancy and control as under a complete legal title, to proceed against the trustee, the holder of the legal title, within two years after the passage of the Act of 1856, and because she did not she is barred of all claim or right to the land." This it is plain disregards possession, and denies to it any effect as evidence of execution between the trustee and *cestui que trust.* We cannot agree to this. Here was entry before the statute began to operate, and against this we think the statute did not run or begin to run. It is true, in Miller *v.* Franciscus, 4 Wright 335, a different doctrine seems to have been expressed by this court. The case did not require any opinion on the precise point involved in the present case; it was well decided without it on other grounds; it was therefore but a *dictum,* which on further reflection we feel bound to qualify, as we have endeavoured to do above. We hold that against possession in the *cestui que trust* the law of the statute of 1856 does not run.

It might be very difficult often, if a contrary doctrine prevailed, for a *cestui que trust* by implication to protect himself from loss, if in all circumstances, whether in or out of possession, he would be bound to institute proceedings to enforce the execution of the trust in his favour within five years, or in default lose his land. Suppose the trustee absent without leaving any agent or other representative, and continues absent for more than the period fixed by the statute; if the *cestui que trust* can gain nothing by possession taken, and can find nobody to sue to compel the execution, what is he to do? The statute has no saving clause in case

[Clark *v.* Trindle.]

of absence. Can the trustee after he returns bring suit against the *cestui que trust*, who may have been in possession during all the time, and recover? If possession will not protect, nothing else can. Is he to win in such an unrighteous proceeding? It cannot be. This is a statute for the prevention of frauds, but it must not be so construed as to become itself an instrument of fraud, as it would be in such a case, and we have not supposed an extreme or impossible case. We need not, however, further elaborate the point; what we have said will sufficiently indicate our opinion, that there was error in ruling the 2d point in favour of the plaintiff below and defendant in error. There are several minor matters which must now claim our attention.

Both parties claimed under the same title, viz., the sheriff's deed to Elizabeth Clark; the one as legal owner, the other as *cestui que trust.* It was manifest, therefore, that neither need go farther back. Whenever this appeared, that was the common source of title, and the true starting-point between the parties. It abundantly appeared in this case. This error is therefore not sustained.

2. We think the 2d assignment of error is sustained. We have not seen any reason why Lyman Clark was not a witness to prove the contents of a record admitted to have been destroyed. This was not a proceeding to supply a lost record, but to give secondary evidence of its contents, the loss being admitted. Why could he not do it? The doubt seems however to have been rather on account of a receipt on the record, signed by an attorney since dead. Could he prove that this receipt was on the record? Most certainly, if he knew the handwriting. That being done, then the question would be as to its effect. But that is not embraced by the exception. Its effect was another thing after the record was supplied by secondary evidence. But the court rejected the evidence to supply it. This was the error. Wherein, the question would be, is the receipt of the attorney on the record evidence that the money was paid? I would say, if he was the attorney who entered the judgment it would be (1 Grant 17), but we are not called on to express an opinion on this point, but only on the exclusion of the witness as to what was on the destroyed record. We think he should have been admitted, and then, if he proved the receipt of the attorney on record for the amount of the judgment, the case would have stood just as if the docket lay open before the court with a judgment satisfied by attorney. I suppose the law to be plain as to the effect of the evidence in that case.

3. This point we have answered in the first matter discussed above.

4. I am at a loss to discover the hypothesis upon which the court charged, or assented to the plaintiff's 3d point, "that if

2 P. F. SMITH—32

[Clark *v*. Trindle.]

there was a joint occupancy of the land in dispute, by Elizabeth Clark, Samuel Clark and other members of the family, until the death of Elizabeth Clark, in January 1846, the plaintiff is entitled to recover." The argument on neither side sheds any light on this point. As it appears to us, there being no statutory nor presumptive bar in the period of nine years of joint occupancy, there was error in this. It was the duty of the defendants in error to have enlightened us on this point, but they do not, and as we see no reason for such an answer to the point we must reverse it, albeit the court may have had some reason for it which we cannot discover, unexplained as it is.

5. We think with the plaintiff in error, that the entry of Mrs. Clark on the land in dispute, along with and as a member of the family of which Samuel was one, ought not under the circumstances to have been assumed as an entry under colour of title, so as to become a starting-point for the running of the Statute of Limitations. I cannot see how it would run against Samuel or his heirs without an ouster and exclusive possession, which does not seem to have been pretended. We see no other errors in the case, but it must be reversed for the several reasons given above.

Judgment reversed, and *venire de novo* awarded.