## S. BESWICK ET AL. v. G. C. PLATT.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued January 22, 1891—Decided February 16, 1891.

(a) The defendant undertook to construct a wharf according to certain specifications furnished by the owners, guaranteeing that it should remain in good condition for a specified period, if used for landing purposes only. The contract price was paid by the owners, on completion, but, the structure falling soon after, they brought suit against the contractor for damages:

1. There being evidence that the plaintiffs saw the work as it was in progress, accepted it, and paid the contract price in full for it, and also, that the structure fell because of a storage of sand upon it, and not in its use for landing purposes only, the owners alone were responsible for any defect, and it was not error so to instruct the jury.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 144 July Term 1890, Sup. Ct.; court below, No. 484 December Term 1888, C. P. No. 4.

On February 2, 1889, Samuel Beswick and Edward Kay, trading as Beswick & Kay, brought trespass against George C. Platt, afterwards (perhaps) amended by the statement of claim to assumpsit. Issue.

At the trial on May 19, 1890, it was shown, in substance, that in December 1887, after some negotiations, the plaintiffs entered into a written contract with the defendant by which the latter was to construct for the plaintiffs an extension of their wharf or landing on the Schuylkill river; that when the contract, in the shape of proposals by the contractor, was presented for execution, specifications for the work being embraced therein, the defendant refused to execute it, unless the words, " provided the same is used for landing purposes only," were inserted at the end of the following sentence : " I also guarantee that the said work will be in good condition at the expiration of one year after the same is built as above, provided the same is used for landing purposes only ; " that, thereupon, the clause

Charge of Court below.

was inserted and the contract executed with the provision in
it as quoted, and with the further provision: "It is agreed
that immediately after the work shall be fully completed and
delivered in a satisfactory manner, said George C. Platt shall
forthwith receive his money." It was also made to appear that,
during the progress of the work, some slight modifications were
made in the plans, with the consent, however, of the plaintiffs,
and sometimes by their direction; that when the structure was
completed, it was delivered to the plaintiffs who paid to the
defendant the contract price, to wit, $3,146,25, and that in a
few months thereafter the wharf fell and went into the river.
The plaintiffs claimed, from the evidence, that the wharf was
unskilfully and negligently constructed; in reply, the defend-
ant claimed, from the evidence, that the work was done in a
skilful and workmanlike manner and according to the specifi-
cations as modified by the plaintiffs themselves, who observed
and approved of the work as it was being done, and that the
structure fell by reason of the fact that it was being used, not
for landing purposes only, but for the storage of large quantities
of sand.

At the close of the testimony, the court, WILLSON, J.,
charged the jury in part as follows:

I infer that Mr. Platt proposed to build the wharf in a cer-
tain way, which would involve a considerable expenditure of
money, probably more than they cared for, and they modified
the plans and specifications, and finally submitted to him the
specifications for the wharf which they wanted built. [Now,
you can readily see, as men of intelligence and common sense,
that if these were the circumstances, they have no right to
blame Platt for the plans upon which it was constructed, if it
broke down by reason of a defect in the plans or specifications.
They are alone responsible for the work of their own hands.][1]
Nor can sympathy properly be exercised towards men who had
placed themselves in such a position; and I speak of it in this
way, because it is possible in view of what has been said, you
will be led to consider this case sympathetically, rather than
practically. . . . .

When the contract was entered into, it was signed. It ap-
pears that the defendant said, "I won't sign that contract as

Charge of Court below.

it is drawn up; you must insert these words, ' that the wharf is to be for landing purposes only ;'" and that was inserted, and that clause is a very material clause in determining the rights and obligations of the parties in this case. It does not need an expert, gentlemen, to tell you what that clause means. They have been called here for the purpose, but if there had not been one of them in the case, I take it you would have no difficulty in arriving at the proper estimate of the meaning of those words. They mean just what they say. If the wharf was for the purpose of enabling goods and merchandise to be landed, and not to be stored, it is perfectly obvious that a burden deposited there upon it and remaining, would be more likely to cause it to break down, than if these goods and merchandise were merely transported over the structure. . . . .

It is alleged that, when this contract was entered upon by the defendant, he departed from some specifications in some respect. Upon that point I do not intend to enter into any great detail upon the various points exhibited in the testimony. It seems to me that the minuteness with which you have been carried through these details, is not profitable to the case. If it were not for the specifications, I should think that the plaintiffs would have no claim. The work was done under their eyes, under the terms of the contract and the specifications. It may be that there were departures, more or less marked, from the exact terms of the contract. Still, when the work was done, they paid for it and settled in full. Now, certainly, when business men enter into a contract for the doing of work to be done to their satisfaction, [when they accept the work after they have seen it in progress, and after it was done, they cannot stand before a jury, with a good face, and ask to be repaid money which they have voluntarily themselves paid out to the man who did the work for them;] [2] and it seems to me that these details cannot be of any special value to you in determining the main question of the case, whether or not the wharf was constructed so as to be suitable for a period of a year for the purposes of landing only. . . . .

The defendant also says that in some other respects there were slight variations from the precise specifications; for instance, he said that in some cases he did not put in screw bolts. He gives you the reason for it. He said that when the piles

were driven, they took such an angle that when they were cut for the clamps to be fitted to them, there was not enough left to afford a hold or purchase for the bolts; and, therefore, he had to put one of these smaller spikes there, and then over the top of the clamps there was one of the large ones driven through a hole, bored for the purpose into the top of the pile. He says it was done in a few instances; they say more frequently. Now, gentlemen, you are not required in a contract of this kind absolutely, literally, positively, to exact compliance as necessary with the contract. You are to regard a fair substantial compliance with what is required as what is necessary. You can readily understand that, in the nature of things, it would be impossible to drive piles down into the bed of the river so that they would stand up, like balusters in a staircase, exactly parallel, exactly perpendicular. I do not suppose it would be a possible thing. I do not suppose human ingenuity has yet devised any plan by which this can be done; and, therefore, the work which is to be done must be determined according to the nature of the work. The perfection of the work, the character of the work, are to be estimated according to the sort of work which is to be done.

Now if, in these respects only and for such reasons, there was a minute departure from the terms of the contract, it would hardly be fair or proper for you to say that, because of such departures, the defendant had broken his contract.

[There is another point; that is, the question as to whether there was double clamping upon the outer edge of the wharf. Well, you have witnesses upon both sides, one or two. Mr. Morgan, I think possibly somebody else, called by plaintiffs, who said it was only single clamping, that double clamping would be to put one upon one side of the outer row of piles, and one upon the other side. The defendant said that the plan he used was double clamping, and the reason, the explanation he gives, is this; that the row of timbers running along in the direction of the river was one clamp, and the other was the one running in a perpendicular direction, proceeding from the land and tied to it. That, he says, constituted the double clamping, and the reason he gave for it seems to me to have some force.] [3] I do not propose to pass upon this case from the standpoint of a mechanic, but he said it is stronger than the other, and that

Opinion of the Court.

the whole structure was tied more strongly together than it could possibly be if the double clamp was regarded as a double row of timber, running along the outer row of piles.

There are some details, of which these are samples, and you have heard the testimony on both sides. What I have said to you in a general way, will apply to the whole case. [What I have also said to you in regard to the plaintiffs' consent to variations, you should also bear in mind, because such consent absolved the defendant from responsibility so far as exact compliance with the specifications of the contract is concerned.] [4] . . .

—The jury returned a verdict in favor of the defendant. A rule for a new trial having been discharged and judgment entered, the plaintiffs took this appeal, assigning as error:

1–4. The portions of the charge embraced in [ ] [1 to 4]

*Mr. George B. Carr*, for the appellants.

*Mr. Benjamin H. Lowry*, for the appellee, was not heard.

PER CURIAM:

The plaintiffs were defeated in the court below, and now complain of certain passages in the charge of the court. The charge, as a whole, fairly presented the case to the jury, and we have no fault to find with the portions assigned as error. The plaintiffs saw the work as it was in progress, were satisfied with it, and accepted it. If the plans and specifications did not call for as strong and substantial a wharf as the plaintiffs wanted, that was no fault of the defendant, who appears to have constructed it in accordance with their wishes. At least the jury have so found, and with this finding the plaintiffs will have to be content.

Judgment affirmed.