## CHARLESTON.

COLLINS v. BOARD OF TRUSTEES OF DAVIS AND ELKINS COLLEGE.

Submitted January 28, 1913.    Decided June 17, 1913.

1. MECHANICS' LIEN—*Notice to Owner—Payment to Principal Contractor.*
   The present mechanics' lien law, Code 1906, chapter 75, gives right of direct lien to one performing labor or furnishing material under a contract with the principal contractor or his sub-contractor, and no notice to the owner in advance of the performance of labor or furnishing of material is necessary to a protection of the right as against payments by the owner to the principal contractor.    (p. 587).

2. SAME—*Payment to Principal Contractor—Defects.*
   Under the mechanics' lien law, payment by the owner to the principal contractor of a part or all of the contract price constitutes no defense against a lien the right to which exists.

or is incipient by the performance of labor or the furnishing of material prior to the payment. (p. 587).

3. SAME—*Principal Contractor—Effect—Recorded Contracts.*

By recording the contract with the principal contractor, pursuant to Code 1906, chapter 75, section 5, the owner may limit his liabilities under the contract so that the amounts to be paid by him shall not exceed in the aggregate the contract price, and such amounts may include any payment, pursuant to the contract, made by the owner to the contractor when no incipient or perfected right to lien exists for labor performed or material furnished before the payment. (p. 587).

4. SAME—*Recording Contract—Notice to Laborers and Material-men.*

When the contract between the owner and the contractor is recorded, one proposing to perform labor or to furnish material under a contract with the principal contractor or his sub-contractor, must take notice of the times of payment of the contract price provided for therein; and any payment made according to the terms of the recorded contract before the beginning of the performance of labor or the furnishing of material will limit a lien for such labor or material to the amount of the contract price unpaid. (p. 589).

5. QUESTION NOT DECIDED.

*Quaere:* May the building contract be recorded for the limiting of the owner's liability against liens without its being acknowledged or proved? (p. 591).

6. MECHANICS' LIENS—*Persons Entitled—Sub-Contractors.*

A sub-contractor, in the sense of one to whom a specific portion of the work is sublet by the principal contractor, may assert a lien under Code 1906, ch. 75, sec. 3. (p. 591).

7. JUDGMENT—*Res Judicata—Pleadings.*

*Res judicata* must be pleaded or shown by the record. It can not be availed of merely by citation to a published opinion. (p. 593).

(WILLIAMS, JUDGE, dissenting).

Appeal from Circuit Court, Randolph County.

Bill by Creed Collins and others against the Board of Trustees of Davis & Elkins College and others. Decree for plaintiffs, and the Board of Trustees of Davis & Elkins College appeals.

*Modified and Affirmed.*

*E. A. Bowers* and *Price, Smith, Spilman & Clay*, for appellants.

*W. B. Maxwell, D. H. Hill Arnold,* and *Talbott & Hoover,* for appellees.

ROBINSON, JUDGE:

The decree sought to be reversed by this appeal subjects to sale the building and grounds of the Davis and Elkins College for the satisfaction of mechanics' liens.

The board of trustees contracted with Hobbs & Co. for the erection of the college building at the price of $47,378. The contractors so far proceeded with their undertaking that approximately $40,000 of the contract price was paid them under monthly estimates of the architect, as provided in the contract. Then, insolvency of the contractors intervened, and by proceedings in the Federal Court they were involuntarily declared bankrupts. In the bankruptcy proceedings, receivers appointed for the bankrupt contractors were directed to complete the building. The remainder of the contract price in the hands of the Board of Trustees, approximately $7,000, was taken over by the bankruptcy court and applied toward the completion of the contract by the receivers. When the building was completed a considerable sum remained as assets of the bankrupts and was applied as such in the bankruptcy proceedings. Thus it will be observed, about $40,000 of the contract price was voluntarily paid by the owner to the contractors, and the residue was paid out by the owner under the order of the bankruptcy court.

Because of the insolvency of the contractors, many liens under Code 1906, chapter 75, section 3, were asserted against the property for labor performed and material furnished prior to the bankruptcy. It seems that the claims of the direct laborers were satisfied by orders and disbursements made in the bankruptcy court. The suit which we have before us involves the enforcement of liens claimed by material men and subcontractors of specific portions of the work. It is of course a proceeding under the statute, directed against the property, while the bankruptcy case had only to do with the residue of the contract price as assets of the bankrupt contractors.

Upon the report of a commissioner a number of liens have been decreed against the property, amounting in the aggregate

to nearly $15,000. Appellant, the Board of Trustees, mainly insists that the property is not at all subject to any of these claims. Specific exceptions to certain of the claims decreed as liens are also assigned.

The main contention that the property is not at all subject to the claims that have been decreed as liens against it is based on the fact that all of the contract price was paid out by the owner. It is submitted that since about $40,000 of the contract price had been paid to the contractors before the claims were asserted as liens, and since the residue was paid on the contract by order of the bankruptcy court, there is no liability against the property under the statute giving liens to mechanics, laborers, and others. In other words, it is insisted that when the contract between the owner and the contractor is recorded, the owner may pay out the contract price pursuant to the terms of the contract without liability for the claims of those who have performed labor or furnished material for the building, as long as the owner is given no notice that such claimants will look to the property for the payment of their claims. Under the present mechanics' lien law, that enacted by the Legislature of 1891 and slightly amended in 1903, all of which is contained in Code 1906, chapter 75, we can not sanction this contention.

That for which appellant contends was our law of mechanics' liens prior to our present law. It was the law as contained in Code 1887, chapter 75. Perhaps it was the better law; but as judges we have no province to say that it was, or to adopt it for that reason. Moreover, it may be that we should return to the principles of the enactment contained in Code 1887, chapter 75; but it is for the Legislature and not for this court to say that we shall. We must apply legislative enactments as we find them, though their policy or effect may be subject to sound criticism.

It will be necessary to define in a general way the meaning of the provisions of the present mechanics' lien law in relation to the rights of those performing labor or furnishing material under a contract with the principal contractor, since appellant contends for a construction widely at variance with that which we must announce.

By our former statute it indeed was provided that a mechanics' lien only affected what had not been paid by the owner to the contractor at the time the notice of the claim of lien was given,

unless the person claiming had given notice to the owner before doing work or furnishing material that he would look to the owner for payment.   No such provision is made by the present statute. The present law does provide, in section 3, for the claimant's notice to the owner before doing work or furnishing material, but that is clearly in another connection and for a wholly different purpose.   We shall see that a very different scheme of the limiting of the owner's liabilities is embodied in the present statute, as compared with that contained in the former law.

The present statute gives a direct lien to one performing labor or furnishing material under a contract with the principal contractor or his subcontractor.   To that extent it embodies the so-called Pennsylvania system as contradistinguished from the New York system which was the basis of the former statute contained in Code 1887, ch. 75.   Phillips on Mechanic's Liens, sec. 57; Boisot on Mechanics' Liens, sec. 225; 27 Cyc. 89; *Hunter* v. *Truckee Lodge,* 14 Nev. 24.   But in construing the present statute, section 3, which gives this direct lien, must be read in connection with section 5, whereby the owner may limit his liabilities by recording his contract with the principal contractor.

Section 5 provides that "no payment by the owner or his agent, to a contractor, shall affect or impair the lien of a laborer, or material man, provided for in section three."   But this provision is immediately followed by these words: "But such owner may limit his liabilities so that the amounts to be paid by him shall not exceed in the aggregate, the price stipulated by the contract between himself and the contractor, by having the said contract, or so much thereof, as shows the contract price, and the times of its payment, recorded in the office of the clerk of the county court of the county, where such house or other structure is situated, prior to the performance of the labor and the furnishing of the material, or the machinery for the same."   Here we have that which gives the owner right to limit his liabilities under the contract.   It does not define the liabilities as being merely those arising from liens.   It is broad enough to take in any other liability under the contract.   The provision, however, must be taken in relation to the preceding one that says no payment shall affect or impair any lien.   Both provisions must be given effect. Taken together, they plainly say that though no payment by the

owner to the contractor may affect or impair a lien, still the owner may record the building contract and thereby limit his liabilities under it, so that the amounts to be paid by him shall not in the aggregate exceed the contract price.    Now, the act says that the recording of the contract shall operate to confine the "amounts to be paid" by the owner to the contract price.    What amounts? We must say all amounts that are properly payable under the contract, whether they are payable by its terms or by the law in relation to liabilities for liens.    The recordation must not only show the contract price but "the times of its payment."    Why give notice of the times of payment?    Surely this must be for the purpose of notifying those about to perform labor or furnish material that part of the contract price may have theretofore been paid by the owner so that a lien for labor thereafter performed or material thereafter furnished will not affect the full contract price.    It is plainly implied that if the contract is recorded, payments to the contractor according to the terms of the contract may sometimes safely be made by the owner.    But we have seen that they can not be made to the impairment of liens. In view of the words of both of the provisions, we must hold that the first provision means that payments under the terms of the recorded contract can not be made to the impairment of liens that exist or have incipiently set in by virtue of section 3 when the payment under the contract becomes due.    Suppose, however, that no liens have attached when a payment under the contract becomes due—that all labor or material has been paid for in cash by the contractor to that time.    Or, suppose that the contractor has obtained waiver of all liens that have set in to that time.    The payment can then be made without affecting any lien, if the contract is recorded.    It is then an 'amount to be paid' under the contract that is protected by the recording.    It is a liability then due, because no liens have set in.    The contract demands that the owner pay it to the contractor and the law does not forbid, since payment will not affect any existing right to lien..    It is one of "the amounts to be paid by him," in the language of the act.    When paid, it counts on the limit of liabilities.    Liens thereafter attaching are limited by such payment.    And it is for this reason that the recordation must show the times of the payment.    When one is about to perform labor or to furnish material, he has notice by the recorded contract

that payments may have been made and his right to lien thereby cut down or limited to the residue of the contract price. The laborer or material man, before performing or furnishing, must take notice of the times of payment mentioned in the contract whenever that contract is recorded. What other purpose could there be for the requirement that the recording shall show the times of payment?

We hold, therefore, that the owner must take notice of all liens under section 3 that have set in when a payment to the contractor becomes due; that he can at no time make a payment under the contract to the impairment of a lien that may be perfected and relate back under section 3 to a time prior to the proposed payment, on account of labor performed or material furnished before that time. But we also hold that the laborer or material man must likewise take notice of all payments that have become due and may have been paid under the terms of the contract prior to the beginning of the performance of labor or the furnishing of material by him.

We do not overlook the fact that under section 3 the right to liens begins to run when any labor is performed or material furnished, and that the incipient right continues on down during the performance and furnishing and even for thirty-five days thereafter. Let it be distinctly noted that we hold that after such lien rights begins to run, the owner can not pay to the contractor even at the times mentioned in the recorded contract without still being liable to the laborer or material man. But where a payment at a time and in the amount mentioned in the contract can be made without interference of liens, or where it can be made by the contractor's clearing up all lien liabilities to the date of the same, it may be made by the owner and thereafter his liabilities for liens is reduced accordingly.

When the contract is recorded, the amount of the contract price is, in a sense, a fund for the payment of liens given by section 3, for which fund the property may be resorted to, but the evident meaning of section 5 is that the fund may be reduced by payments made in accordance with the recorded contract, as to those who do not begin to perform labor or furnish material until after those payments are made. This provision works no injustice to laborers or material men. They may observe by the recorded contract when payments by the owner to the contractor

may be made thereunder. They may ascertain what amount of the contract price is still in the hands of the owner before they begin to perform labor or to furnish material, and may refuse to extend credit to the contractor if they deem their right to lien security insufficient. They may in advance of giving their labor or material observe that by this limiting statute the fund has been so far paid to the contractor that it would be unsafe for them to extend credit because of the limited amount remaining, or because of many liens to which the remaining amount may be subject. On the other hand to hold, indeed in the face of the plain import of the provision for limiting liabilities, that the owner can not make a payment to the contractor without taking the risk of liens that may begin to set in long after the payment is due under the contract, is virtually to hold that the owner for his own protection must hold all the contract price in his hands until all work under the contract is finished, so as to be able to pay out prorately the amount in case mechanics' liens taken in the end should exceed it. Such a holding would be onerous on both contractor and owner. It would annihilate the contract between them as to the times of payment. If the contractor did not have independent means to carry on the work, it would readily cause him to fail in the execution of the contract, and would most frequently cause the owner the annoyance of liens on his property and the task of clearing them therefrom. It was certainly not so intended. The construction we give is the one justified by the spirit and purpose of the law, as well as by the letter of the law. It does no more than to enjoin on the contractor the payment of all bills for labor and material of every kind that have accrued to the date of the payment provided for in the contract, and the securing of waivers of liens therefor, before the owner can pay him according to the provisions of the contract. How well do we all know that the fulfillment of this injunction by the contractor always proves beneficial to himself as well as to the owner.

It is only when the contract is not recorded that the right to liens given by section 3 to those performing labor or furnishing material under a contract with the principal contractor or his subcontractor, has full sway. The alternative provision immediately following the provision for recording the contract makes this clear. When, however, the contract is recorded, the limita-

tions by the statute on the right to liens under section 3 are such as to modify materially that right, as we have shown.

While it appears in the case under consideration that all of the contract price was paid by the owner to the contractors, the latter part thereof by the judgment of the bankruptcy court, still no case is pleaded or proved· that brings appellant within any saving of the statute in relation to the limiting of liabilities under the building contract by the recording thereof. Though we consider the contract a recorded one, still appellant has made no showing that any payment of the contract price by the owner limited its liabilities thereunder in any way. The contract calls for monthly payments by the owner to the contractor in no specific amounts, but only for monthly payments of ninety per cent of the estimated work done at the time of each payment. It is not shown when the work was begun so that we may fix the dates when the monthly payments became due, nor is it shown what the date and the amount of each payment was. Therefore, we can not see that any payment under the contract was made so as to be out from under liens, claimed, or so as to limit the liens to any particular part of the fund. The burden was on appellant to show that its liabilities for liens was limited. As far as we can see from the record, none of the· liens proved, reported, and decreed were limited by any of the payments which appellant made to the contractors. Indeed, from the record generally it would seem that all the payments, other than the one under the order of the bankruptcy court, were made regardless of the liens claimed. If appellant could have proved otherwise, it should have done so before submitting its case for final determination.

The contract between the owner and the contractors involved in this case was recorded without having been acknowledged or proved by witnesses. The question whether it is a recorded contract in contemplation of the statute is raised and argued. We need not say, in view of our finding that no case of a limiting of liabilities is made, even if the contract was properly recorded. The aggregate of the liens claimed and involved in this case, about $15,000, is far under the $40,000 of the contract price paid by the owner to the contractors. The question of recording, therefore, becomes an immaterial one.

It is submitted as to several of the liens decreed that they are·

not valid because claimed by parties to whom the contractors sublet portions of the work. It is said that a subcontractor of this character is not given a lien by the statute. We interpret the statute otherwise. Section 3 gives the right of lien to "every material man, workman, laborer, mechanic or other person performing any labor or furnishing any material or machinery, under a contract with a principal contractor or his sub-contractor." This is a broad provision. It surely gives right of lien to any one performing a portion of the work and furnishing material therefor under any kind of sub-contract. All those mentioned are indeed sub-contractors. The statute does not undertake to make distinction between them based on the kind of sub-contract they fulfill. Nor shall we undertake to do so. The statute even allows those contracting with a sub-contractor to take a lien. Shall we cut out the intermediate man? Note that it says, "or other person performing any labor or furnishing any material or machinery, under contract with the principal contractor." That is, 'any person who performs any labor or furnishes any material under a contract with the principal contractor.' Is not one who erects the foundation or a porch under a contract with the principal contractor within this clause? Does he not perform labor and furnish material under his contract with the principal contractor? Does the statute make any distinction between this sort of sub-contractor and one who performs a day's labor or furnishes a single plank? Plainly the only test is that of a contract with the principal contractor. Such a contract makes one a sub-contractor. Though the sub-contract may be of the character that the sub-contractor does not himself personally perform the labor or furnish the material, he is still one 'performing labor and furnishing material.' "Under statutes providing for liens in favor of persons who 'perform' labor, the better doctrine is that one who furnishes the labor of his employes, such as a contractor, is to be considered as performing labor." 20 Amer. & Eng. Enc. Law 340. The distinction sought to be made is not justified by the plain language of the statute. Moreover, it is too refined to be practical. Indeed, it is apparent that the plain import of sections three and five is to protect all persons who put labor or material into a building under contract with the principal contractor or his subcontractor, and though in different connections in these sections

different terms are employed to designate such persons, the terms should be considered as used interchangeably and as referring to this same class of persons.

It is suggested in appellant's brief that the question of the liability of the property for the liens claimed against the same in this suit is *res judicata*—that the bankruptcy court decided that which we are called upon to decide. This point is not sustained by the record. Indeed *res judicata* is not pleaded or presented by the record in any way. Of the orders and judgments of the bankruptcy court the record shows only that the contractors were declared bankrupt and that the residue of the contract price was expended under the order of that court. Such action by the bankruptcy court affects no question in this suit. We are cited to the published opinion of the court in the bankruptcy case. That alone will not do for a showing of *res judicata*. It appears from the opinion that the case involved only ascertainment of the assets of the bankrupts and ascertainment of the debts to which those assets were liable. For the purposes of that case all the mechanics' liens involved here, but one, were upheld as valid against the assets of the bankrupts. However, the case in bankruptcy did not and could not involve the question whether the property of appellant was liable for these mechanics' liens. Appellant was not the bankrupt, nor could these liens be there adjudicated as against its property.

The exception to the lien decreed Hanley, based on the fact that he was one of the bondsmen of the contractors, is not well taken. It suffices to say that no case was pleaded, or otherwise made out, calling for an adjustment of liabilities between Hanley and appellant.

Lyon, who was a sub-contractor for the plumbing work, finished his contract under the receivers. It is contended that he lost his right to lien because he did not assert his claim by notice to the owner within thirty-five days after ceasing to perform labor and furnish material for Hobbs & Co. He gave the notice within the statutory time after ceasing work under the receivers. Was he working under the same contract? If so, he could claim the lien within thirty-five days after finishing it. He testifies that he proceeded under the old contract; the receiver who negotiated with him in the matter testifies that he made a new and independent contract with him. Thus the evidence is in direct

· conflict.. We give weight to some considerations which tend to show that Lyon was merely completing his original sub-contract under the successors of the contractors, the receivers, and to the fact that the commissioner found in favor of the lien and the court below confirmed that finding. The exception will be overruled.

The cross-assignment of error as to the lien of Kane & Keyser Hardware Co. will be sustained. We are of opinion that the commissioner improperly disallowed a large part of the claim asserted by this company, and that the court erroneously overruled the exception to the report of the commissioner in this particular. The lien claimed was for the sum of $1941.20. The amount allowed and decreed was $656.43, with interest to Feb. 15, 1910, making in all the sum of $886.17 as of that date. The decree should have been for the full amount claimed with interest to Feb. 15, 1910, making the sum of $2622.56 as of that date. From the evidence it appears that the items for which the lien is asserted are all within one continuous contract or running account, and that the commissioner was in error in considering that the right to lien had been lost as to some of the items by reason of lapse of time. We can not uphold the contention that the materials were furnished for separate and distinct purposes or under distinct contracts or orders. Therefore the decree will be modified and corrected as to the mechanics' lien of .Kane & Keyser Hardware Co. The amount covered by that lien will now be decreed to be $2622.56, as of Feb. 15, 1910, instead of $886.17 as of that date.

If the college corporation is not protected by the bonds it took from the contractors and must .lose the amount of the liens decreed, it is indeed unfortunate. But its officers in that event must be themselves chargeable with the blame. The contract . with Hobbs & Co. in express terms gave them the right to retain from any payment of the contract price as it became due an amount sufficient to cover all claims of laborers or material men that had become chargeable to the property at the time. The law enjoined on them the duty to look out for liens of sub-contract- · ors, in any event. They could have fully protected the college . corporation. But instead, they paid over .to the contractors, ostensibly on the personal responsibility of the latter. An investigation before payments, such as owners under our law must

make, would have disclosed the very claims now decreed against the property.

The decree in this cause must be affirmed, except so far as hereinbefore modified and corrected in relation to the lien of Kane & Keyser Hardware Co.

*Modified and Affirmed.*

WILLIAMS, JUDGE, *(dissenting)*:

I think it is essential to determine whether the contract between the trustees and the Hobbs & Co., was recorded, in order to determine the rights of the appellees. If it was not a recordable paper, I admit that the simple act of spreading it upon the record by the clerk would not amount to a recordation. *Raines* v. *Walker,* 77 Va. 92; *Abney* v. *Lumber Co.,* 45 W. Va. 446, 32 S. E. 256; *Coal Co.* v. *Smith,* 63 W. Va. 587.

It is contended that it was not recordable because it was not authenticated. I do not think authentication is necessary. There is nothing in the mechanics' lien statute requiring it to be acknowledged or verified, to make it recordable. Boisot on Mechanics' Liens, sec. 78, says: "Where the statute does not expressly so require, it is not necessary that a written contract, intended to secure a mechanics' lien, should be authenticated before being recorded, nor need it be verified by affidavit." Section 3, chapter 74, Code 1906, provides, in case of sale of goods where the seller delivers possession but retains title until the goods are paid for, that the sale shall be void as to creditors of, and purchasers without notice, from such buyer, unless a notice of such reservation be recorded in the clerk's office of the county where the property is. There is no authentication required by that statute and this Court has held that none is necessary to make the contract recordable. *Wagon* v. *Hutton,* 53 W. Va. 154; *Hatfield* v. *Haubert,* 51 W. Va. 190. And further, as indicating that the contract need not be acknowledged, the owner is not required to record the whole of his contract but may record only "so much thereof, as shows the contract price, and the times of payment." The contract in this case was recorded July 9, 1903, before any work had been done or material furnished by appellees. The statute says the owner may limit his liabilities, so that the amount to be paid by him shall not exceed in the aggregate the price fixed in the contract, by recording his contract with the principal contractor. I think it is clear that

.the purpose of recordation is to protect the owners so that he may not be compelled to pay, in the aggregate to all persons concerned, any more than he agreed to pay the principal contractor; and at the same time to notify the laborers and material men of the price contracted for with the contractor, and of the times when the payments therein become due.   Boisot on Mechanics' Liens, sec. 78; *Pimlott* v. *Hall* 55 N. J. L. 192, 26 Atl. 94; *Ayres* v. *Revere*, 25 N. J. L. 474.

A comparison of the present statute with the mechanics' lien law, as it was in 1887, will afford material aid, I think, in ascertaining the purpose for which the changes in the law were made.

Some of the prominent features of the former statute were as follows:

(1)   It gave the principal contractor, the laborer and material men liens of equal dignity.

(2)   It required *thirty* days written notice to the owner, after ceasing to furnish material or perform labor, in order to preserve the lien.

(3)   It limited all liens to the balance due from the owner to the principal contractor, at the time he was given notice of the lien, unless he had been notified in writing by the laborer or material man, before he did any work or furnished material, that he would look to him for his pay; and in such case the lien was for the full value of the work done or material furnished by such person after giving notice, notwithstanding it might exceed the contract price.

(4)   It made no provision for recording the contract, and permitted the owner to make payments to the contractor according to the terms of his contract, and thus to affect, or limit the liens of the laborer and material man *pro tanto,* unless he had been notified by them in writing, as above stated.

The distinguishing features of the present law are:

(1)   It subordinates the lien of the principal contractor to the liens of the laborer, material man and sub-contractor; and makes the latter liens of equal dignity.

(2)   The time within which notice of the lien is to be given the owner is changed from thirty to *thirty-five* days.

(3)   It contains the same provision as the old law, whereby the laborer or material man may secure a lien for the full amount

of his claim, by notifying the owner in writing before performing labor or furnishing material, that he will look to him for his pay; and, in the event such notice is given, it dispenses with the thirty-five days notice, unless the owner, in writing, requires it. It also gives the owner the right to demand of the laborer or material man, in writing, that he file with him his itemized account; and, in the event of his failure to do so within ten days thereafter, releases the owner and his property from any liability for all work or material done or furnished, prior to the time of his giving the notice.

(4)   It does not expressly limit the amount of liens to the price stipulated with the principal contractor, but it provides that the owner may do so by having his contract with the principal contractor, "or so much thereof, as shows the contract price and the times of its payment", recorded. If the owner records his contract before any work is done or material furnished, the liability of his property for liens is no greater, I think, than it was under the law of 1887. That such is the result of recording the contract, is clearly implied from the language of the latter part of section 5, which says what shall be the effect of his failure to record his contract. It says that, if he fails to record the contract, the property shall "be held liable for the true value of all labor done, and material and machinery furnished therefor, prior to such recording, although the same may exceed, in the aggregate, the price stipulated in the contract between the owner and the contractor." Note the words, "prior to such recording." Must not the converse of this be true? If his property is made liable because of his failure to record his contract, is it not clear that the legislature intended that the recording should have the effect to relieve it of liability; and more especially so, when the act expressly says the owner may thus limit his liability so that the amount for which the property is liable shall not exceed, in the *aggregate,* the amount stipulated in the contract. What effect should be given to the language of sec. 5, viz.: "No payment by the owner or his agent, to a contractor, shall effect or impair the lien of a laborer, or materialman, provided for in section three of this chapter." To give it full effect, as if it stood alone, would nullify the provision for limiting the owner's liability; and would prevent him from carrying out his contract with the principal contractor. But all parts of the act must be

given some effect and all made to harmonize, if possible. Hence the effect of that provision must be limited. To what extent? The opinion limits its application to payments made to the principal contractor, after the material man or laborer has begun to furnish material or perform labor, notwithstanding the owner has recorded his contract before that time; and gives no effect to the recordation as a notice to the lien claimants. But the statute says that, if he fails to record his contract, he shall only be liable for what has been done prior to the recording of the contract. To my mind, that means that if the owner records his contract before anything is done or furnished, his property is not liable, unless he has received the written notice which section 3 provides may be given him by the laborer or materialman, before he has begun work or furnished material. Hence, I think, the words, "No payment by the owner," etc., should be construed to mean, no payment made by the owner to the principal contractor, before his contract shall have been recorded, shall impair the lien of a laborer or materialman provided for in section three of this chapter. The construction placed upon that clause of the statute by the opinion, imposes upon the owner the burdensome duty of ascertaining that every material man and laborer is paid the full amount due him for material or labor, before he can safely make a payment to the principal contractor according to the terms of his contract. It will place upon him the burden of giving personal oversight to the construction of his building to ascertain who is doing labor upon it and, if possible, who is furnishing material to be used in its construction, the very thing which, as it appears to me, the making and recording of his contract was designed to relieve him of. I think the recordation of the contract is designed to be constructive notice to every material man and laborer, who thereafter becomes interested, both as to the price for which the contractor has agreed to build the house and the amounts and times when he is to receive his payments. And, having such notice, they must assume that the owner will comply with his contract and make payments when they become due; and in order that their liens shall attach to, and bind such payments, they must give to the owner the written notice, provided for in section 3, that they will look to him for pay. It seems to me that this construction is not only consistent with the language of the statute, but is

much more reasonable and practical than the one given in the opinion; and will operate justly upon all persons interested. If the owner is to be held liable, notwithstanding the recording of his contract, for all labor and material done and furnished after the recording of it, he is in a position where he is liable to be imposed upon, if the principal contractor happens to be a dishonest man. The contractor usually buys his material from many different persons, located in different parts of the country, and the owner must get his information from him, on whose order they were furnished. And if he fails to give him correct information, and the owner should make payment to the contractor, he would, nevertheless, be liable to the material man according to the opinion, even though he had recorded his contract. By the law of 1887, which did not provide for recording the contract, the owner could pay to the contractor, and thereby cut off the liens of the material men and laborers, *pro tanto*, unless he had received written notice that he would be looked to for payment. I think the clause in question was designed to prevent a payment to the principal contractor from having that effect, only in case the contract was not recorded.

· The contract in this case was recorded before any material was furnished or work done; there is no evidence that the trustees were notified in writing by any of the lien claimants that they would be looked to for pay before they did work or furnished material; the decree shows that the property is made liable for several thousand dollars more than the contract price, and for the foregoing reasons, I think the decree should have been reversed.

POFFENBARGER, JUDGE, *(concurring):*

I concur in the conclusion in this case, but not in the construction of the statute, adopted by my associates.

Under the rules of interpretation, a slight and unnecessary implication raised from certain terms used in section 5 of the statute cannot be permitted to limit, cut down or destroy the positive terms of section 3, giving the laborer and material man liens for their labor and materials, superior to that of the principal contractor, and of section 5 itself saying no payment to a contractor shall impair those liens.

No extensive argument in support of this position is offered

here, because it rests upon the plain letter of the statute, entirely accordant with its spirit. Since the terms thereof contravene no constitutional provision nor settled policy or system of law pertaining to a different subject, there is no basis for an assumption or presumption of legislative intent to except anything therefrom by implication, as is sometimes the case. To effect an exception by an implication arising from the terms of the statute itself, not from presumption founded upon a constitutional limitation or an established principle of public policy, the implication must be a necessary, not a mere probable or possible, one. The court here limits and restrains the express terms of sections 3 and 5 of the statute by a clearly unnecessary and barely probable or possible implication.

I must dissent from another proposition asserted by the opinion. Section 3 gives no lien to a sub-contractor as such. He has a lien only for labor, materials or machinery furnished by him, and none for any share in the principal contractor's profit.

The first proposition asserted by my associates will permit the owner and principal contractor, by the terms and provisions of their recorded contract, to defeat claims of laborers and material men and the second will permit the same thing to be done by transactions between the principal contractor and the sub-contractor, contrary to the manifest purposes and spirit of the statute as well as its letter.

Properly applied, the statute may be more onerous and burdensome upon owners and principal contractors than due protection to the rights of laborers and material men requires, but that does not justify any modification by the courts. It is a question of policy or expediency for the legislature. Nothing will bring about the repeal of a bad law more quickly or effectually than rigid enforcement thereof.