250 P.2d 893

**STALEY et al. v. NEW et al.**
No. 5356.

Supreme Court of New Mexico.

Dec. 4, 1952.

Joseph M. Montoya and Edwin L. Felter, Santa Fe, for appellants.

Albert H. Clancy and Samuel Z. Montoya, Santa Fe, for appellee George R. New.

LUJAN, Chief Justice.

On May 28, 1948, Joe E. Staley and Mary ·G. Staley, his ·wife, entered into a written contract with George R. New, who undertook and agreed to build a dwelling house for them at a cost of $9,561, at Santa Fe, New Mexico, "according to plans and ·specifications prepared and furnished by ·W. M. Lumpkins," their agent. These plans and specifications were introduced in evidence as plaintiffs' Exhibits 1, 2 and 3. The same ·were paid for by George R. New and added to the cost of building the house. These plans did not include a heating system. During the course of construction of the house, Mary G. Staley consulted W. M. Lumpkins regarding the kind of heating system desirable for use in their house and he recommended radiant heating. Shortly thereafter Lumpkins contacted Ray Harmon, Jr., of the Harmon Corporation in Albuquerque, New Mexico, and requested him to draw plans and specifications for a radiant heating system. In compliance with said request Mr. Harmon drew the same and forwarded them to him by mail. These plans and specifications were likewise paid for by Mr. New and also added to the cost of the house.

On June 25, 1948, Mr. New, by written contract, sublet the installation of the heating system in the house to C. B. Bunn, d/b/a American Heating and Ventilating Company, who, in consideration of $1,309, agreed to furnish all material and perform all the labor required by said plans and specifications.

A trial to the court without a jury resulted in findings from which it was concluded that the plaintiffs were not entitled to recover damages from defendants. Judgment was entered against the plaintiffs and this appeal followed.

For convenience, Joe E. Staley and Mary G. Staley, plaintiffs-appellants, will be referred to as the appellants; the defendants-appellees, George R. New, as the general contractor; C. O. Bunn, as the subcontractor; and Ray Harmon, Jr., d/b/a the Harmon Corporation, as the architect for the heating system.

Shortly after appellants moved into their new home, they discovered that the heating system did not function correctly, in that it did not heat the house adequately. Complaint was made to both Mr. New and Mr. Bunn relative to the existing defect. Although several efforts were made to adjust the same it never did work and it was then that appellants sought the aid of the court, seeking damages of $5,500 against appellees for breaches of contract and warranty.

▮▮▮ At the outset, it may be said that as to the architect, the record discloses no contractual relations between the appellants and said architect. Upon this phase of the controversy the trial court concluded as a matter of law: "That there was no privity of contract between the plaintiffs and the defendant 'The Harmon Corporation.'" It is the general rule of law that one who is not a party to a contract cannot maintain a suit upon it.

The appellants contend that the filler between the pipes should have been thoroughly dried pea gravel and that pumice was not a proper material to be used in view of the fact that it is an insulating material which diffuses the heat. It is clear from the evidence that the subcontractor submitted his bid based upon a copy of the plans and specifications prepared by the Harmon Corporation at the instance and request of W. M. Lumpkins, appellants' agent, and delivered to him by the general contractor. These plans and specifications were introduced in evidence as appellants' Exhibit 4. That portion of the specifications (Exhibit 4) calls for either thoroughly dried pea gravel or loose pumice to be installed between the pipes. It is also clear that at the time the subcontractor submitted his bid he had in mind the furnishing of either dried pea gravel or loose pumice. Manifestly the subcontractor was given the option either to use pea gravel or loose pumice; and this being so, the use of either would be a compliance with the contract. Upon this phase of the controversy the trial court found:

"That the defendant, C. O. Bunn, complied with the terms of the written agreement with the defendant, George R. New, and installed the materials in a workmanlike manner according to the plans and specifications prepared by the defendant, Harmon Corporation, and in accordance with the changes in the said plans and specifications as were made at the request of the plain-

tiffs through their architect and approved by him.

- "That defendant C. O. Bunn complied with the terms of the written agreement with George R. New and installed the materials in a workmanlike manner according to the plans and specifications prepared by the defendant Harmon Corporation."

It also found:

"That the defendant, George R. New, in completing the installation of the radiant heating system, did comply with the plans and specifications as prepared by the defendant, Harmon Corporation, and as submitted to him by the plaintiffs, through their architect, W. M. Lumpkins, and that the materials used in the installation of the same were of such quality and kind as called for by the plans and specifications; that the labor used was proper and performed in a workmanlike manner as required by the terms of the agreement with the plaintiffs herein, and in full compliance with the plans and specifications prepared by W. M. Lumpkins and the defendant, Harmon Corporation, the same being plaintiffs' trial Exhibits 1, 2, 3 and 4 respectively."

The only duty devolving upon the general contractor and the subcontractor was that they perform the required work and furnish the material in accordance with the plans and specifications given each for the purpose of submitting a bid. This is exactly what they did. We here have a situation of a general contractor furnishing plans and specifications to a subcontractor which were prepared by the Harmon Corporation at the instance and request of plaintiffs' agent and handed to him by the said agent. A subcontractor may be briefly described as one who has entered into a contract express or implied, for the performance of an act, with a person who has already contracted for its performance, Collins v. Board of Trustees of David and Elkins College, 72 W. Va. 583, 79 S.E. 10; Y. M. C. A. of North Yakima v. Gibson, 58 Wash. 307, 108 P. 766.

Manifestly it would be inequitable and unjust to hold that a general contractor or a subcontractor cannot rely upon specifications given to them for the express purpose of submitting a bid. The rights of the parties are to be measured and determined by the particular set of plans and specifications (Exhibit 4) upon which the contractor and subcontractor submitted their bid. The rule is well stated by the Supreme Court of Illinois in the case of City of Elgin v. Joslyn, 136 Ill. 525, 26 N.E. 1090, 1091: "A contractor who bids for work is bound only by the specifications which are shown to him at

the time he bids, and upon which his bid is based, * * *."

█ It is generally held that where a building contract refers to the plans and specifications and so makes them a part of itself, the contract is to be construed as to its terms and scope together with the plans and specifications. Ryan v. Curlew Irrigation & Reservoir Co., 36 Utah 382, 104 P. 218; Stein v. McCarthy, 120 Wis. 288, 97 N.W. 912. And where the plans and specifications are by express terms made a part of the contract the terms of the plans and specifications will control with the same force as though incorporated in the very contract itself. City of Lake View v. MacRitchie, 134 Ill. 203, 25 N.E. 663; White v. McLaren, 151 Mass. 553, 24 N.E. 911.

It was held in Adams v. Tri-City Amusement Co., Inc., 124 Va. 473, 98 S.E. 647, that a building contractor, being obliged to follow the plans and specifications furnished as his guide by the architect as the agent of the owner, was not responsible for the collapse of basement walls, which was attributed to the architect's failure to design them of sufficient strength to stand on low and wet ground.

And in Beswick v. Platt, 140 Pa. 28, 21 A. 306, a judgment in favor of a defendant contractor was upheld upon the ground that the plans and specifications did not call for as strong and substantial a wharf as was needed, and that the defendant was not at fault for its collapse; having constructed it in accordance with the plans and specifications.

█ In the case at bar, the plans and specifications, which were prepared by the Harmon Corporation at the request of plaintiffs' agent, and for which the general contractor and subcontractor could not be expected to assume responsibility, directed how the work should be done, and by this they were controlled. The evidence upon this issue was resolved by the trial court in the general and subcontractors' favor. If as contractors contend, and the trial court properly found, the plans were approved by plaintiffs' agent, all that the contractors can be held to have warranted was that they would install the heating system in a workmanlike manner, in strict compliance with the approved plans and specifications, and there is sufficient evidence to sustain a finding that this was done. If there was an implied warranty of sufficiency, it was made by plaintiffs' agent who approved the plans and specifications prepared at his request; and in calling for proposals to produce a specified result by following them, it may fairly be said that he warranted them adequate to produce that result. The responsibility rests upon the party who fathers the plans and specifications and presents them to another with the implied representation that they are adequate for the purpose to

be accomplished. On this phase of the case the court found: "That the plaintiffs have been damaged, but the fault lies not with any of the defendants herein, but with the plaintiffs' so-called architect," (Lumpkins).

From a careful reading of the record we are of the opinion that the evidence supports the findings and that the judgment of the trial court was right. The trial judge had the witnesses before him. He observed their demeanor and appearance upon the witness stand. He was in a better position to judge of their credibility than we are.

Appellants requested the trial court to make separate findings of fact which were refused. These requests are themselves a challenge to sufficiency of the evidence to sustain the material findings made. Consequently, the facts thus found are the facts to be reviewed, and if supported by substantial evidence the findings must be sustained. In re White's Estate, 41 N.M. 631, 73 P.2d 316; Krametbauer v. McDonald, 44 N.M. 473, 104 P.2d 900; Flippo v. Martin, 52 N.M. 402, 200 P.2d 366; Brown v. Cobb, 53 N.M. 169, 204 P.2d 264.

Finding no reversible error the judgment is affirmed.

It is so ordered.

McGHEE, COMPTON, and COORS, JJ., concur.

SADLER, J., concurs in the result.