M. D. EDWARDS and Haskell Edwards,
Appellants,

v.

C. H. WALTON et al., Appellees.

No. 6715.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 2 1957.

Rehearing Denied Jan. 13, 1958.

Calloway Huffaker and Harold Green, Tahoka, for appellants.

Travis Shelton, Sam H. Allred, Lubbock, Claude Cravens, Slaton, Crenshaw, Dupree & Milam, Lubbock, for appellees.

NORTHCUTT, Justice.

C. H. Walton owned a business lot in Slaton, Texas. Jack Humphreys desired a building in which to carry on his business to be known as "Jack's 5 & 10 Cent Store," in Slaton, Texas. Walton and Humphreys entered into a contract whereby Humphreys was to build a building upon the lot owned by Walton at Humphreys' expense, said building not to cost less than $7,500. Humphreys was to lease said lot for a period of ten years at the rate of $20 per month and the building at the end of ten years was to belong to Walton. Humphreys did not have the money to construct the building, so he borrowed the money to construct the building from one Jesse Johnson. Humphreys was going to repay Johnson the money loaned to Humphreys for constructing the building at the rate of $130 per month, making the total to be paid monthly by Humphreys of $150. Walton was to have the privilege of buying the building after a certain time and if Walton would buy the building then Humphreys would pay Walton $150 per month instead of paying $20 for the lot, and the $130 to be paid to Johnson. In the meantime, Walton sold one-half interest in the lot in question to one Joe Teague. Humphreys employed M. D. Edwards and Haskell Edwards to construct the building in question upon what is known as a cost-plus basis. The building was constructed and accepted by Humphreys and he opened up his business in said building and had paid his first $130 to Johnson, when Walton and Teague immediately purchased the building and Johnson was paid from the purchase money and Walton and Teague received, as it was agreed, rent at the rate of $150 per month thereafter since Johnson had been paid. Humphreys had been occupying the building and paying Walton and Teague the $150 monthly rental for a period of about thirteen months when, during a rain storm, the roofing to said building caved in and the building and contents were greatly damaged.

Walton and Teague made some kind of an agreement with M. D. Edwards and Haskell Edwards to repair said building, and it is this agreement that is in question here. M. D. and Haskell Edwards repaired the building but were never paid for the same and they brought this suit against Walton and Teague to recover $2,872.47 as reasonable, necessary and proper sum for the rebuilding of said building, together with $750 attorneys' fees. Walton and Teague, securing permission of the trial court, made Continental Insurance Company of New York, New York, General Insurance Company of America of Seattle, Washington, Jesse Johnson and Jack Humphreys as third party defendants. The trial court granted the request for severance of both insurance companies, and any action as to them is not involved herein.

Walton and Teague by their second amended original answer and first amended cross-action denied owing M. D. and Haskell Edwards any sum of money but pleaded in the alternative, should it be determined that the plaintiffs should recover for the repairs of said building, that they have judgment over and against said cross defendants, Jack Humphreys and Jesse Johnson, and for general and special relief. Walton and Teague pleaded:

"that the Plaintiffs were immediately contacted after the collapse of the roof, whereupon the said Defendants, acting by and through the Defendant, M. D. Edwards, advised that they had been concerned about the construction of the roof, and that they stood behind their work, and that they wished to uphold their reputation as builders in the community, and that if the collapse of the roof was due to structural failure, they would rebuild and repair it at their own expense and cost; that if the collapse of the roof be due to a cause covered by insurance on the said building, then they would be paid the amount of the insurance coverage for rebuilding the

same; otherwise, there would be no cost to the Defendants for repairing and rebuilding of the same;" (we are considering the reference made to the Edwards' boys as defendants instead of plaintiffs as a typographical error)

The case was tried to a jury but after all the evidence was introduced, by agreement of the parties, the jury was dismissed, and the case was submitted to the court. Judgment was granted by the court that the plaintiffs take nothing by their suit, that the defendants, as cross-plaintiffs, take nothing by reason of their cross-action against the cross-defendants, and that defendants and cross-defendants go hence with their costs. From this judgment the plaintiffs perfected this appeal.

The trial judge made and filed his Findings of Fact and Conclusions of Law as follows:

"Findings of Fact.

"I.

"I find that the Plaintiffs, M. D. and Haskell Edwards were in the buildings business in Slaton, Texas at all times pertinent to this Law suit.

"II.

"I find that the Plaintiffs, M. D. and Haskell Edwards originally constructed the building in question as building contractors and completed the same in the latter part of August, 1952.

"III.

"I find that the roof on the building in question collapsed during a rain storm on or about the 22nd day of October, 1953.

"IV.

"I find that the Plaintiffs failed to construct the roof in question in a good and workmanlike manner and that the collapse of the roof of the building in question on or about the 22nd day of October, 1953, resulted from such failure on the part of the Plaintiffs to construct the said roof of the said building in a good and workmanlike manner.

"V.

"I further find that the Plaintiffs contracted with the Defendants whereby the Plaintiffs would re-construct the roof of the said building for the amount of money, if any, recovered from the insurance companies carrying the insurance on the said building, and I further find that, as of this time, no insurance has been received by the Defendant, or paid to them, on any of the policies. I further find that the Plaintiffs agreed to re-construct the building, without cost to the Defendants, in order to preserve their reputation as builders.

"VI.

"I find that the Plaintiffs did not make or present a claim to the Defendants for the repairs to the building for approximately a year after the repair work was done.

"VII.

"I find that the Plaintiff, M. D. Edwards testified in substance during the course of the trial that it was his opinion that the roof of the building fell because of structural defects that he knew was there when he put the building up, and further testified that he anticipated that the roof of the building would fall in, and that he didn't tell the Defendants or Cross Defendants of this.

"Conclusions of Law.

"I.

"I conclude that at the time of the original construction of the building in question, and at the time of the repairs to the said building, the Plain-

tiffs, M. D. and Haskell Edwards were partners in the said construction and reconstruction.

"II.

"I conclude that the contract found by the Court in paragraph numbered 'V' of the Findings of Fact, was based on good and sufficient consideration.

"III.

"I conclude that the Plaintiffs, M. D. and Haskell Edwards, were under an implied obligation to do all the work required of them, or performed by them, in the original construction in a workmanlike manner and that their failure to do so rendered them liable for the resulting damage and necessary repairs to said building.

"IV.

"I conclude that the Plaintiffs should be denied recovery on their Quantum Meruit theory of the case for the reason that the Court has found that Plaintiffs agreed to re-construct the building in question for the amount of money, if any, recovered on insurance policies, and that the Plaintiffs constructed the building in question originally under an implied warranty to construct it in a good and workmanlike manner and that their failure to do so rendered the Plaintiffs liable for the resulting damage and necessary repairs when the roof of the said building fell in.

"V.

"From all the facts and the Law in the case, I conclude that the Plaintiffs should be denied recovery on all of their theories pleaded and that the Defendants and Cross-defendants should go hence with their costs without day. Signed and filed this the 14th day of March, 1957."

■ Appellants present this appeal upon twenty-seven points of error but we deem it unnecessary to discuss each of these points separately. We think it is so well-settled that the proof must conform to the pleadings that it is not necessary to cite any authorities. Walton and Teague pleaded that plaintiffs agreed that if the collapse of the roof was due to a cause covered by insurance on the said building, then they would be paid the amount of the insurance coverage for rebuilding the same; otherwise, there would be no cost to the defendants for repairing and rebuilding of the same. This was a condition (if it was covered by insurance). The trial court found as a fact that plaintiffs contracted with Walton and Teague that plaintiffs would reconstruct the roof of the building for the amount of money, if any, recovered from insurance companies carrying the insurance on said building and then found that no insurance had been received by the defendants. By its judgment the court decreed that the plaintiffs take nothing by their suit. We are of the opinion, and so hold, that according to the pleadings of the defendants they do not plead that the plaintiffs agreed to rebuild or reconstruct the roof in question for the amount of money, if any, recovered from the insurance companies carrying insurance on the building. In other words, if it was covered by insurance they would not charge more than the amount of the insurance. The evidence of the defendants is contrary to their pleadings. The condition of the plaintiffs promise, as pleaded by Walton and Teague, was nothing more than an agreement or offer as to the amount of money they would charge to rebuild said roof. But under the findings of the trial court, where the insurance companies had been made parties to this suit and granted a severance and a showing that they had been sued on the policies, the plaintiffs should at least have the right to recover the amount of insurance, if any, collected in the suit against the insurance companies.

■ By appellants' fourteenth point of error it is contended the trial court erred in concluding that appellants could not re-

cover herein on their quantum meruit theory because they had agreed to reconstruct the building for the amount of money, if any, that might be recovered on insurance policies since there were no pleadings or evidence to support such conclusion. We sustain this point of error since the pleadings and evidence do not correspond. The defendant's pleadings are directly in conflict with their evidence as to the agreement of the plaintiffs. What we have said also sustains appellees' thirteenth point of error complaining of the holding of the trial court that the plaintiffs agreed to accept what insurance was recovered, if any, and that was a sufficient consideration for such promise, there being no pleadings to sustain such holding.

■ In the lease contract where Humphreys was to build the building in question it was provided: "lessee also agrees that before any improvements for such promises, either in regard to said building or otherwise, are undertaken that detailed specifications for such improvements shall be furnished Lessor, at Lessee's expense." It was originally understood that the trusses were to be angle iron; but when Humphreys learned the angle iron trusses could not be obtained because of a steel strike he informed Walton that they could not be obtained. Walton further testified that Humphreys told him he had contacted Mr. Biggs and that Mr. Biggs was going to make him a better truss, and that he, Walton, agreed to that because Biggs was supposed to be the expert on the building. Walton testified that he agreed with Humphreys that the trusses that would be made by Mr. Biggs could be substituted for the trusses that were to be prefabricated and made out of angle iron. It is undisputed in this record that the cause of the falling in of the roof in question was the giving away of the trusses built by Mr. Biggs. There is no evidence in this record that there was any fault in any manner of the work of the plaintiffs unless it could be considered because they used the trusses made by Mr. Biggs. Plaintiffs constructed the building

for Humphreys and it was accepted by Humphreys. It was purchased by Walton and Teague after it had been accepted by Humphreys, and did not fall until some thirteen or fourteen months thereafter. The fact that Edwards did not think the trusses constructed by Biggs were proper and the roof might fall in did not render plaintiffs liable to Walton and Teague; first, because there was no relation between plaintiff and Walton and Teague at the time the building was being constructed, and secondly, because plaintiffs built the building under the supervision of Johnson and Humphreys. The trusses used were not constructed by appellants but used by plaintiffs at the instructions of Humphreys and with consent of Walton. Waters v. Yockey, Tex.Civ.App., 193 S.W.2d 575.

In the case of American Surety Co. of New York v. San Antonio Loan & Trust Co., Tex.Civ.App., 98 S.W. 387 at page 400, it is stated:

"The cases cited are distinguishable from those where the builder constructs the building in a workmanlike manner, according to plans referred to in the contract. In such cases it is universally held that he is not responsible for its subsequent destruction caused by its own inherent weakness; for his undertaking was simply to do the work with reasonable skill after the designs furnished by the architect, and he is not a guarantor of the strength of the edifice when finished. Clark v. Pope, 70 Ill. 128; MacKnight Flintic Stone Co. v. Mayor, 160 N.Y. 72, 54 N.E. 661; Beswick v. Platt [140 Pa. 28], 21 A. 306; Kellogg Bridge Co. v. Hamilton, 110 U.S. 108, 3 S.Ct. 537, 28 L.Ed. 86; Filbert v. City of Philadelphia, 181 Pa. 530, 37 A. 545; Bancroft v. San Francisco Tool Co., 120 Cal. 228, 52 Pa. 496; Burke v. Dunbar, 128 Mass. 499. This principle, however, does not obtain when the same person is architect, contractor, and builder and is bound in these several capacities. Louisiana Molasses Co. v. Le Sassier, 52 La.Ann.

2070, 28 So. 217. The rule deducible from both classes of cases cited is 'that in the absence of a warranty, if the building fall before completion on account of inherent defects in the plans, the contractor must bear the loss; but, if it fall on that account after completion, the loss must be borne by the owner.' In the first instance the contractor has failed in the performance of his contract; in the second he has done everything he has agreed to, and consequently his liability is at an end, and, as between him and the owner, the loss must fall upon the latter."

We find no consideration passing to the plaintiffs for their agreement, if made, to reconstruct the building without cost to Walton and Teague, and think appellants should be permitted to recover under the theory of quantum meruit. Bratcher v. Moore, Tex.Civ.App., 219 S.W.2d 527.

Judgment of the trial court affirmed as to Johnson and Humphreys but reversed and cause remanded as to the remaining parties herein.