The City.of Lake View

*v.*

Charles MacRitchie *et al.*

*Filed at Ottawa October 31, 1890.*

1. Contract—*for work to be done—specifications, including a guaranty—as a part of the contract—extent of the guaranty.* A contract between contractors and a town, for laying a water pipe in a lake connecting with water-works, referred to the specifications, and plan thereto attached, as more fully describing what was to be done by the contractors, and expressly made the same a part of the contract. The specifications contained a provision that "all of the work to be guaranteed to remain in good condition for one year from date of acceptance:" *Held*, that such guaranty was as effectually made a part of the contract as if its very words had been incorporated in it.

2. Contractors for making an improvement according to the plans and specifications, may guaranty against all defects, whether they arise from insufficiency of the materials, unskillfulness of workmen, or from unfitness of the plans or designs, whether devised by the one or the other of the parties to the contract, or by some other person.

3. A party contracted with a village for the laying of pipes to supply water, which was to be done according to plans and specifications furnished by the village engineer, and all work and materials were to be to his satisfaction and subject to his approval. The specifications contained this clause: "All of the work to be guaranteed to remain in good condition for one year from date of acceptance:" *Held*, that the guaranty was not to be limited to work and materials furnished by the contractor, but embraced the plans and specifications, and covered the structure or work as an entirety, which was the joint product of the plan or design, the labor bestowed and the material furnished. It will be presumed that the consideration for such guaranty was included in the contract price.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding.

This was an action of debt, on a bond given to secure the performance of a certain contract entered into by MacRitchie & Nicol, two of the appellees herein, to furnish and lay on

the bottom of Lake Michigan an inlet-pipe, to be connected with the Lake View water-works. The condition of the bond, so far as material to the questions in this case, is, that the contractors "shall in all respects well and truly keep and perform the said contract, in accordance with the terms thereof, and the plans and specifications therein referred to, in the times and manner described; and further, shall indemnify, keep and save harmless the town of Lake View from all liabilities, * * * damages and expenses in consequence of granting said contract, or which may in anywise result from the carelessness or neglect of said MacRitchie & Nicol, their agents, employes or workmen, in any respect whatever."

By the terms of the contract the contractors were to furnish all the material and do all the work required for the complete construction of an inlet-pipe and crib, together with a complete branch inlet-pipe and intake, to be connected with the well of the water-works, in accordance with the plans and specifications attached to said contract, and made a part thereof. One of the provisions of the contract was, that "all the work shall be executed in the best and most workmanlike manner, and no improper material shall be used, but all materials of every kind shall fully answer the specifications, or, if not particularly specified, shall be suitable for the place where used." All material used and all labor performed was subject to the inspection, and the approval or rejection, of the town engineer, and he had the right finally to decide all questions arising as to the proper performance of said work, and the work was to be done under his immediate direction and superintendence. The specifications describe the work, the size and material of the pipe, the flexible joints to be placed therein, and specify the number of piles to be driven along the line of the pipe, at such points as might be directed by the engineer, and the number of ball and socket joints to be used on the line of pipe, which was to extend from the shore end two thousand feet into the lake. The specifications also contained this clause:

"All of the work to be guaranteed to remain in good condition for one year from date of acceptance." The engineer of the town drew the plans and specifications, and the work under the contract was entered upon and carried to completion under his actual direction. Twenty flexible ball and socket joints were required by the specifications to be placed on the line of said pipe, but the distance apart or location of said joints was not detailed in any manner, but as the pipe was laid they were placed as the engineer directed, though the location of them was contrary to the judgment of the contractors. Some months after the work was completed and accepted by the town, a break was found in the pipe, and the same was taken up by the town at considerable expense, and to recover the expense so incurred the action was prosecuted on the bond.

On the trial it was one of the contentions of appellees that the break did not occur by reason of any defect in material or workmanship, but was due to defects in the plan and specifications adopted by the town and its engineer, in the lack of a sufficient number of flexible ball and socket joints to enable the pipe to conform itself to the undulations on the bottom of the lake, which were changed by every severe storm, and that the ball and socket joints that were in the pipe were improperly distributed along it, so that at points where, owing to the distance from the shore and the effect of the waves in moving the sand upon the bottom, they should have been placed at short intervals in the pipe, they were, by direction of the engineer, placed one hundred and fifty feet apart, and at other points where not needed they were placed close together. It was the theory of the trial court, however, that the guaranty clause contained in the specifications bound the contractors for any breaks that might occur in the work within one year from its acceptance, even though such break could not be ascribed to bad workmanship, or the use of defective or improper materials.

The court, at the request of appellant, instructed the jury that the provision in the specifications whereby the contractors guaranteed that the work should remain in good condition for one year, was in fact a guaranty, not only that the work should be done in the most workmanlike manner and with proper materials, but that the contractors would further see that it would remain in good condition for one year from the date of acceptance; and refused to instruct, as requested by appellees, that if the evidence showed that the break in the pipe was not owing to any defective workmanship or material in the execution of the contract by appellees, but was owing to defects in the plans devised by the town's engineer, and adopted by the authorities of the town, for the construction and laying of said pipe, the plaintiff could not recover.

The verdict and judgment in the Superior Court of Cook county were in favor of appellant, and for $3000 damages. On appeal to the Appellate Court that judgment was reversed, and the record was subsequently brought here by this further appeal.

Mr. Jonas Hutchinson, for the appellant:

A man may agree that his work in building a carriage, a threshing machine or a steam engine shall remain in good condition for a given time, although he did not design it, and the design was wholly of the person for whom the article was made.

Messrs. Freeman & Walker, for the appellees:

The warranty, "all of the work to be guaranteed to remain in good condition for one year," etc., applies only to the material and workmanship furnished by the contractors. It did not bind them to anything more.

The contractors are not responsible for defects in the plan or design of the work.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The instrument which was executed by MacRitchie & Nicol and the town of Lake View specifically referred to the specifications, and plan thereto attached, as more fully describing that which was to be done by the contractors, and expressly made the same part of the contract, and so the provision in the specifications, "all of the work to be guaranteed to remain in good condition for one year from date of acceptance," was as effectually made a part of the contract as it would have been had the very words of such provision been incorporated in the writing which was signed. The guaranty that the work should remain in good condition for the designated period of time was not, by the terms of the contract, limited to the work to be done and the materials to be furnished by the contractors. It was elsewhere in the agreement expressly stipulated that their work should be executed in the best and most workmanlike manner, and not only that no improper materials should be used, but that all materials furnished, of every kind, should fully respond to the requirements of the specifications, and that wherein the particulars of the materials supplied were not specified, such materials should be suitable for the place where used; and moreover, all such materials and all labor performed were subject to the inspection of the town engineer, and to his approval or rejection.

MacRitchie & Nicol were contractors of many years' experience in the character of work involved in the contract, and a few years before had laid a similar pipe for the same municipality, within a few feet of the proposed line of pipe. They had full notice and knowledge what the plan or design of the contemplated structure was, and in the contract which they signed, special reference was made to the specifications and plans appended to such contract. They also knew the work was to be done in accordance with the direction of the town engineer, and expressly agreed to do the work under his imme-

diate direction and superintendence, and to his entire satisfaction, approval and acceptance. By their contract, voluntarily entered into, they agreed to be governed by the directions of the engineer, and his judgment and opinion, in the absence of fraud, bound them as conclusively as it did the town. In other words, both parties, the contractors as well as the town, assumed the risk, except as otherwise specially provided for in the contract, of an error of judgment, under circumstances of good faith, of the engineer, in giving his directions in respect to the contemplated work. *(Canal Trustees* v. *Lynch,* 5 Gilm. 521; *Wallace* v. *Curtiss,* 36 Ill. 156; *Fowler* v. *Deakman,* 84 id. 130; *Snell* v. *Brown,* 71 id. 133; *Finney* v. *Condon,* 86 id. 78; *Stose* v. *Heissler,* 120 id. 433.) Thus, knowing the whole plan and design of the work, and being fully advised that they would be compelled to follow the directions given by the engineer, and conform to his judgment in respect to all matters of detail not particularly determined by the contract and specifications, they warranted that the work would remain in good condition for one year from the time of its acceptance by the town. The clear and natural import of the language used, when applied to the subject matter of the contract,—*i. e.,* the inlet-pipe and crib and branch inlet-pipe and intake, including the ball and socket joints, and every other part of the work described in the plans and specifications,—was, that the structure or work, as an entirety, which was the joint product of the plan or design, the labor bestowed and the materials furnished,—all three combined,—would remain in good condition.

No reason is perceived why contractors may not guarantee against all defects, whatever their origin,—whether they arise from insufficiency of the materials supplied, from unskillfulness of workmen, or from unfitness of the plan or design,— whether devised by the one or the other of the parties to the contract, or by some other person. In case of a contract with such warranty, it will be presumed that the consideration for the guaranty was included in the price agreed to be paid for

the work to be done. It is not unreasonable to suppose that one desiring a fabric or structure, or an apparatus, or a piece of mechanism to be made, the idea of which is his own or that of his servant or agent, may wish to take the judgment as to its practicability, usefulness and durability, of some person or persons who have a practical knowledge and experience in the construction of things of that sort, and in such case the requirement of a guaranty would be an effectual way of getting the benefit of such judgment. It is the province of the courts to enforce the contract which the town and these contractors have made,—not to make a contract for them. It must be presumed, that had it been their intention to limit the guaranty to the workmanship of the contractors and their servants, and to the materials furnished, such intention would have been expressed in the contract.

The rulings of the trial court were in substantial conformity with the views herein expressed, and we find no error in the record made in that court. In our opinion it was error in the Appellate Court to reverse the judgment of the trial court.

The judgment of the Appellate Court is reversed, and the judgment of the Superior Court affirmed.

*Judgment reversed.*