MANUFACTURERS' AUTOMATIC SPRINKLER CO. v. GALBRAITH et al.

(Circuit Court of Appeals, Seventh Circuit. November 10, 1911. Rehearing Denied April 10, 1912.)

No. 1,751.

1. GUARANTY (§ 18*)—BUILDING CONTRACTS—SUFFICIENCY OF PLANS—VALIDITY OF GUARANTY.

A contractor for the erection of a tank on a steel truss on the roof of a building can validly guarantee the sufficiency of plans prepared by engineers acting for the parties jointly.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 21; Dec. Dig. § 18.*]

2. GUARANTY (§ 36*)—BUILDING CONTRACTS—SUFFICIENCY OF PLANS—EXISTENCE OF GUARANTY.

Defendant contracted to install an automatic sprinkler system in a building, including a tank on a steel truss on the roof, undertaking to furnish the work, labor, and materials for one inclusive price. The specifications required all the iron work shown by drawings of certain engineers, and bound defendant to employ the engineers to make drawings and specifications for the support of the tank, and to examine the premises and report upon the sufficiency of the portion of the substructure which was to be loaded. Defendant agreed to accept the certificate of the engineers as to the sufficiency of the substructure, and to do any work necessary to keep the system operative. It was also agreed that, if the engineers' examination should disclose that the proposed arrangement would involve undue risk, the work should not proceed until a satisfactory device should be agreed upon, and that defendant would "hold the owner harmless from damage to the building or tenants through our own acts or acts of our subcontractors during progress of the work." Held, that defendant guaranteed the sufficiency of the engineers' truss structure.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 38–45; Dec. Dig. § 36.*]

3. GUARANTY (§ 85*)—BUILDING CONTRACTS—SUFFICIENCY OF PLANS—GUARANTY—PLEADING—SUFFICIENCY.

In a suit against defendant for damages to the building, and for damages paid to tenants and others injured through the tank plunging down through the building on the truss collapsing, the declaration averred failure to construct the truss according to the engineers' plans, alleged defendant's undertaking and agreement to guarantee the work for one year; that the guaranty was not fulfilled; that defendant omitted a tie member from the truss as designed by the engineers; and that, through defendant's failure to construct the structure according to the guaranty and by negligence in failing to construct according to the plans, the truss collapsed, etc. Held, that the guaranty was sufficiently declared upon, in the absence of specific objection before verdict.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 99; Dec. Dig. § 85.*]

4. INDEMNITY (§ 9*)—BREACH OF CONTRACT—DAMAGE TO THIRD PERSONS.

Since the tank and its contents, etc., weighed 90 tons, and the floors of the building were constructed of wood, damages resulting to third persons who occupied the building, caused by the tank plunging through the building from roof to basement, must be deemed within the guaranty.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 16, 17; Dec. Dig. § 9.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5.** APPEAL AND ERROR (§ 1061*)—HARMLESS ERROR—DIRECTED VERDICT.

Any error in directing a verdict for not less than a specified amount was harmless, where the trial court would have been warranted in setting aside a verdict for a smaller amount.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4137, 4209–4211; Dec. Dig. § 1061.*]

In Error to the Circuit Court of the United States, for the Eastern Division of the Northern District of Illinois.

Action by Davenport Galbraith and another, Fanny D. Galbraith's executors, against the Manufacturers' Automatic Sprinkler Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Fanny D. Galbraith owned a building in which plaintiff in error installed an automatic sprinkler system. Water was supplied from a tank on a steel truss structure erected on the roof. Within three weeks from completion, during a windstorm of not unusual severity, the truss collapsed, and tank and beams plunged down through the roof and the several floors of the building. Defendants in error recovered judgment for damages to the building and for damages paid by them to tenants and others who were injured in person or property.

By plaintiff in error's written offer and Mrs. Galbraith's written acceptance the contract in suit was formed. Plaintiff in error proposed to install the system, furnishing "the work, labor, and materials" in accordance with appended specifications, for one inclusive price, Mrs. Galbraith "to afford the necessary space and facilities for the materials and the prosecution of the work."

Portions of the specifications, on which the main question in the case arises, reads as follows:

"Structural Iron Work:—Make and set in place all the iron work shown on the drawings of Ritter & Mott. All truss work to be riveted and beam work to be bolted. There is a window on the alley opening into cock loft where beams for support of pressure tanks can be pulled in. Protect cock loft floor and main roof in shifting material and guarantee against damage during progress of work. On completion remove all apparatus and leave in perfect condition. Paint two coats red oxide. We do not include repairs of the present damaged ceilings which may be ordered to be fixed by underwriters. In buildings of this character pipes are not usually painted and such painting is not included in this contract.

"We further agree that we will employ Messrs. Ritter & Mott, structural engineers, to make drawings and specifications for the supports of the tanks and to examine the premises and report upon the sufficiency of the portion of the substructure which is to be loaded.

"It is further understood that if Ritter & Mott shall find that only the usual risk of settlement shall be involved by the arrangement shown on the plans submitted, the owner agrees to accept the certificate of Ritter & Mott as to the effect upon the building of the additional loads, and will not hold us at fault in case of settlement.

"We agree to accept the certificate of the engineers as to the sufficiency of the substructure for our purposes and will not hold the owner at fault in case of settlement, but will do any work necessary in that event to keep the system operative without extra charge.

"If the examination of Ritter & Mott of the footings shall reveal that the proposed arrangement would involve undue risk, the contract shall not be proceeded with until a satisfactory device has been mutually agreed upon by the owners of the building and the Manufacturers' Automatic Sprinkler Company.

"We further agree to proceed with the above installation and hold the owner harmless from damage to the building or tenants through our own acts or acts of our subcontractors during the progress of the work.

"We further agree to guarantee our work for one year and to replace defective material and keep in alignment all piping in order to meet with the acceptance of the Chicago Underwriters' Association.

"The foregoing clause does not include damage to the system due to acts of the owner or tenants, or damages from fire or water, or changes required by the Chicago Underwriters' Association to accommodate fixtures or partitions altered or installed after December 1, 1900, by tenants.

\*     \*     \*     \*     \*     \*     \*     \*     \*

"Any work not mentioned in the foregoing specifications and necessary to complete the entire work is to be done by us without additional charge to the owner."

Questions involved in the assignments of error are these:

Did plaintiff in error guarantee that Ritter & Mott's design of the truss structure would be proper and sufficient?

Was the guaranty properly declared upon?

Were injuries to third parties in property or person within the guaranty?

Was there sufficient proof respecting third parties' claims that were paid by defendants in error?

Did the court commit prejudicial error in charging the jury that plaintiff in error was liable for a certain sum named?

. N. G. Moore and Joseph E. Paden (Oscar A. Kropf, on the brief), for plaintiff in error.

Ralph R. Bradley (Adams A. Goodrich and Wm. A. Vincent, on the brief), for defendants in error.

Before GROSSCUP, BAKER, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). [1, 2] I. If Ritter & Mott were agreed upon as independent engineers to act for the parties jointly, counsel do not deny that plaintiff in error legally could guarantee the sufficiency of the engineers' plans. City of Lake View v. MacRitchie, 134 Ill. 203, 25 N. E. 663. That Ritter & Mott acted for the parties jointly, and that the sufficiency of the truss design was not within the guaranty of "our work," is the contention. But we do not so view the contract.

1. Plaintiff in error proposed to furnish a complete system. Next followed the specifications. Then came the covenant to do any work not specified necessary to "complete the entire work." If the specifications prepared by plaintiff in error were intended to take any part of the "entire work" out of "our work," that intention should have been plainly indicated. If the specifications were silent respecting the employé who should make the truss design, no pretense could be interposed that the design, by whomsoever plaintiff in error had it drawn, would not be included in plaintiff in error's guaranty of "our work." A named employé, no less than an unnamed, is merely the hand of the master. Plaintiff in error employed a steel company to erect the truss and a cooperage company to supply the tank. Truss and tank would have been as fully "our work" if steel company and cooperage company had been named in the specifications as the employés who would do those parts of the "entire work."

2. Though Ritter & Mott were employés of plaintiff in error, Mrs. Galbraith could have agreed to be bound by their plans for the truss. Ritter & Mott were also "to examine the premises and report upon the sufficiency of the portion of the substructure to be loaded." Both parties agreed to be bound by the report, without liability one to the other in case the report proved unwarranted. If plaintiff in error had intended to except their employés' truss design, the contract

clearly demonstrates that its officers knew how to draft and understood the force of such an exception.

[3] II. Three counts were in the declaration. Two averred failure to construct the truss in accordance with Ritter & Mott's plans. In the third were allegations of plaintiff in error's undertaking, "and that defendant (plaintiff in error) further agreed to guarantee said work for the period of one year; that plaintiff, confiding in that promise and guaranty, permitted defendant to enter upon the building; * * * that the said structure and appurtenances were not constructed by defendant so that the same in any manner complied with the guaranty so given by defendant"; and (after setting forth that defendant omitted a tie member from the truss as designed by Ritter & Mott, the count proceeded) "that by reason of defendant's failure to construct said structure according to the terms of said guaranty, and by negligence and failure of defendant to construct said structure according to Ritter & Mott's plans, the steel foundation structure * * * collapsed," etc.

Whether the pleader had in mind to count on the guaranty of a sufficient plan, or on the negligent omission of a member shown on the plan, or on both, may be uncertain. But the course of the litigation in the court below precludes plaintiff in error from making a successful assault upon the declaration here. No challenge, by special demurrer for duplicity, or by motion to make more specific, or in any manner, was directed to the adequacy and definiteness of the pleading. During the hearing of the evidence a situation developed on which the court ruled that whether or not the collapse occurred through the omission of the tie member was immaterial; that the only question was under the guaranty. At the close of the evidence plaintiff in error moved for a directed verdict, but did not object that, with negligent failure to build according to Ritter & Mott's plans out of the case, no basis was laid in the declaration for a recovery on a guaranty of suitable plans. Yet that in fact was the issue to which the court had narrowed the controversy. Rules that objections must be seasonably made and that verdicts cure ambiguities and uncertainties in pleadings were designed to prevent parties, who by the evidence and the court's rulings were informed of the issue and joined therein without claim of surprise, from availing themselves of such undisclosed objections as anchors to windward.

[4] III. We have no doubt, having determined that plaintiff in error guaranteed the sufficiency of the plans for the steel support, that the damages resulting from the collapse were legally within the contemplation and intention of the parties. Ninety tons of tank, water, and steel smashed through the building from roof to basement. The specifications show that they could only have been prepared after an examination of the building. This was a six story, basement, and attic structure, with brick walls and wooden joists and floors. That the 90 tons might cause the building to settle was considered by plaintiff in error, for it shielded itself from liability on that account. Plaintiff in error did not expect a 90-ton pile driver to strike the roof. But, if it should, any reasonable person ought to expect the result that actually followed. Damages to building, and to tenants in property

and person, were the natural and probable consequence of plaintiff in error's breach.

IV. From a careful examination of the bill of exceptions we find that plaintiff in error's objections to the proof of damages must have been understood by the court (no matter what counsel may have intended) to be ·directed and limited to the proposition that defendant was not answerable in law for damages of that character. We find no objections that were clearly directed to the method of proof. Respecting every item, we find that the evidence made a prima facie case. On the personal injury claims, the fact that defendants in error, not knowing whether or not they would ever get back any of their money, paid after advice and investigation by competent and reliable counsel certain amounts in settlement, was some evidence of the reasonableness of the amounts.

[5] V. Plaintiff in error introduced no evidence touching the amount of the damages. If there was error (we do not say so) in directing the jury to return a verdict for not less than a certain amount named, it was harmless on the facts of this record, for the court would have been justified in setting aside a verdict for a smaller amount. In short, under the law and the evidence, the jury could not have brought in any other verdict on any fair and intelligible basis of decision.

The judgment is affirmed.

NOTE.—Judge GROSSCUP participated in the hearing and consideration of this case, but not in the formulation of the opinion.