## McELWRATH v. CITY OF McGREGOR.

### No. 1259.

Court of Civil Appeals of Texas. Waco.
March 16, 1933.

Rehearing Denied April 13, 1933.

Bryan & Maxwell, of Waco, and Davis, Jester & George, of Corsicana, for appellant.

Weatherby & Rogers, of Waco, and J. B. Ford, of McGregor, for appellee.

ALEXANDER, Justice.

In 1927 the city of McGregor entered into a written contract with F. P. McElwrath by which the latter agreed, for a certain price, to pave certain streets in the city of McGregor and to maintain the same in a proper state of repair for a period of five years. In 1931 the city of McGregor brought this suit against McElwrath and alleged that the pavement had become defective, and that he had failed and refused to repair same. The plaintiff sought damages for the breach. A trial before a jury on special issues resulted in a verdict and judgment for the plaintiff for the sum of $6,000. The defendant appealed.

The jury found that the pavement in question developed defects which impaired its usefulness as a roadway within less than five years from the completion of said work, and that such defects were caused by the failure of the base upon which the pavement was laid and by defective materials, workmanship, plans, methods, and processes used in the construction of the pavement; that 75 per cent. of the defects was caused by the failure of the base; that the contractor failed to properly roll the base; and that the failure of the base was caused by the failure to properly roll the base and by defective workmanship, materials, plans, methods, and processes employed in the construction of the pavement; and that $6,000 would be the reasonable cost of repairing such defects.

The appellant contends that under his contract he was not responsible for, and was not required to repair, defects caused by either defective plans or the failure of the base. The evidence shows that the city of McGregor had the plans and specifications prepared for the proposed improvements and advertised for bids. Each bidder was required to familiarize himself with the plans and to submit two bids, one with maintenance for a period of five years, and the other without maintenance. The appellant's bid for construction of the improvements, together with the guaranty of maintenance, amounted to approximately six cents per square yard more than did his bid without maintenance. The city accepted the higher bid with the maintenance provision. It appears that, prior to the letting of the contract, the city maintained some sort of pavement on the streets in question, and there was present on each of said streets a base of either rock or gravel. The contract provided that the new pavement should be laid "on present rock and gravel base." It was recognized, however, that it would be necessary to make some changes in this base before laying the new pavement. The plans and specifications on which the bids were based and which were made a part of the contract required the contractor to make excavations or fills where necessary in order to bring the base to the proper grade. It was further provided that, if it should be found that the material at the subgrade was soft or spongy or unfit for a foundation, the contractor should make such excavation as might be determined by the engineer and refill with approved material. It was further provided that, after the surface had been brought to the proper subgrade, the roadway should be thoroughly rolled and compacted with an approved roller, and, if any settlement occurred, the depression should be filled and rolled until the surface was solid and uniform. It was further provided that, if after the completion of said improvements defects developed in that part of the pavement lying between the rails of the railway line, and it should be found that the defects had been produced by loose rails or other causes chargeable to the railway company, the contractor should not be required to repair same, "provided, however, that nothing herein shall be construed to relieve the liability of the said contractor to keep and maintain any of the other portions of said street in good condition and repair as herein provided, irrespective of the cause producing any defective condition therein." Upon the acceptance of appellant's bid, he entered into a written contract with the city

which provided, in part, as follows: "* * * The Contractor binds himself to use such materials and to so construct said improvements that same will be and remain in good repair and condition for a period of five years after the date of completion and acceptance of the improvements, and agrees that he will repair or reconstruct said improvements within five years from the completion and acceptance thereof if necessitated within that time by any fault of materials, plans, methods or processes employed in the construction thereof, and the Constructor further agrees and binds himself that said improvements for such term shall be and remain in good serviceable condition, smooth and free from any defects that will impair its usefulness as a roadway, and should same, at any time within said period, in the judgment of the Board of Commissioners, whose judgment shall be final and conclusive, become defective and be not in a good smooth and serviceable condition, free from any defects that will impair its usefulness as a roadway, by reason of any defective materials, workmanship, plans, methods, or processes, then the said Board of Commissioners shall cause to be served upon the Contractor a notice in writing to repair such improvements or portions thereof, or reconstruct the same and put same in a smooth, satisfactory and good condition. * * * *"

When the above provisions of the contract are read in connection with the provisions of the plans and specifications, we think it clear that the contractor not only became responsible for, and agreed to repair, any defects resulting from defective plans, as therein expressly so provided, but also defects resulting from the failure of the base or any other cause. While the plans called for the construction of the pavement on the "present rock and gravel base," this did not amount to an assumption by the city of all responsibility for defects in the existing base, nor relieve the appellant of his contractual obligation to properly prepare the base. This provision merely gave the contractor permission to use the existing base where suitable. The contract charged him with the responsibility of ascertaining whether or not the base was in fit condition to receive the pavement, and, if not, to put it in suitable condition therefor. It bound him to so construct said "improvements" that same would "be and remain in good serviceable condition, smooth and free from any defects that will impair its usefulness as a roadway for a period of five years." The proper preparation of the base constituted a part of the services to be performed in constructing the "improvements" and the provision that he would "repair or reconstruct said improvements * * * if necessitated * * * by any fault of materials, plans, methods or processes employed in the construction thereof," applied not only to the materials, plans,

methods, and processes used in preparing and spreading the asphalt which was to constitute the upper surface of the improvements, but also to those used in preparing and properly constructing the base upon which the asphalt was to be laid. The specifications obligated the contractor specifically to use proper materials in making refills in the base, and to properly roll the base, and the jury found that the base was caused to fail by reason of his failure to use proper materials therein and to properly roll the base. It necessarily results that the defects resulting from the failure of the base were caused by the contractor's failure to properly construct said "improvements," and that he is liable therefor. Moreover, the original plans and specifications bound the bidder to use proper workmanship, material, methods, and processes in the construction of the improvements, regardless of whether his bid was one with or without maintenance. If the city had accepted the bid without maintenance, and a defect had arisen by reason of improper workmanship, materials, methods, or processes, the contractor would have been liable therefor. There must have been some additional consideration for the city's agreement to pay the extra six cents per square yard. We are forced to the conclusion that this extra compensation was paid in consideration of an unconditional guaranty of maintenance for a period of five years, regardless of the cause of the defect.

There is no rule of law which would prevent a contractor from guaranteeing against all defects whatever their origin—whether they arise from defects in the plans or defects in the soil upon which the improvements are to be erected. Such contracts have been sustained by numerous decisions. 9 C. J. 754; Lonergan v. San Antonio Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803; Mitchell v. Hancock County, 91 Miss. 414, 45 So. 571, 15 L. R. A. (N. S.) 833, 124 Am. St. Rep. 706; City of Lake View v. MacRitchie, 134 Ill. 203, 25 N. E. 663; Ingle, Executor of Dermott v. Jones, 69 U. S. (2 Wall.) 1, 17 L. Ed. 762; Cameron-Hawn Realty Co. v. City of Albany, 207 N. Y. 377, 101 N. E. 162, 49 L. R. A. (N. S.) 922.

The contract provided that upon completion of the improvements the contractor would execute and deliver to the city a bond with proper sureties guaranteeing said improvements for a period of five years. Such bond was executed and delivered to the city, binding the contractor to repair all defects in said paving "occasioned by improper workmanship and materials," but it did not specifically guarantee against defects resulting from the failure of the base. It is the contention of the appellant that, upon the execution and delivery of the bond and the acceptance thereof, said bond substituted the original

contract and constituted a novation thereof, and amounted to an interpretation of the original contract to the effect that the contractor should be liable only for defects occasioned by improper workmanship and materials, and, since the bond did not specifically guarantee against defects resulting from a failure of the base, the appellant cannot be held liable therefor. In the first place, as hereinbefore shown, we think that under the evidence, as found by the jury, the failure of the base was occasioned by improper workmanship and materials used in the construction of the improvements, and that under the provisions of the bond the appellant is liable for such defects. Therefore, if the bond be construed as a substitution for or a novation, or as an interpretation of, the contract, the appellant would still be liable. However, we do not believe that the acceptance of the bond can be given the effect contended for by appellant. The suit was brought on the original contract and not on the bond. The appellant pleaded substitution and novation, but requested no issue thereon. In order for one contract to constitute novation or substitution for a prior one, it is necessary that both parties so intend. Such intention is never presumed. It must either appear that the new contract is so radically different from the old one that it necessarily supersedes the same as an entirety, or there must be sufficient evidence to support a finding that both parties so intended. Austin v. Guaranty State Bank (Tex. Civ. App.) 300 S. W. 129, par. 9; Kohn v. Zaludek (Tex. Civ. App.) 38 S.W.(2d) 110. If there is evidence sufficient to raise the issue of such intention, and the evidence is not so convincing that reasonable minds cannot differ, the issue must be submitted to the jury. Hall v. First State Bank (Tex. Civ. App.) 4 S.W.(2d) 253. Since no issue of substitution or novation was submitted or requested by appellant, it will be presumed that this defense was waived.

 The mere fact that the city was willing to accept from the contractor a bond less onerous than the original contract did not relieve the contractor from the obligations assumed in his original contract. The contract and the bond were separate obligations. While the bond may have limited the liability of the surety, it did not affect the liability of the contractor under his original contract. Milske v. Steiner Mantel Co., 103 Md. 235, 63 A. 471, 5 L. R. A. (N. S.) 1105, 115 Am. St. Rep. 354; Chamberlain v. Fox (Tex. Civ. App.) 54 S. W. 297; Lindheim v. Muschamp, 72 Tex. 33, 12 S. W. 125; Cohen v. Munson, 59 Tex. 236.

 The jury, among other findings, found in answer to special issue No. 8 that the contractor used too much oil in mixing the asphalt, and, in answer to special issue No. 11, that he did not use enough oil in mixing the asphalt. The appellant contends that this constitutes such a conflict in the answers of the jury as to prevent the rendering of a judgment on the verdict. The verdict of the jury in answer to any issue must be interpreted in the light of the pleadings and the evidence. Any apparent conflicts in the finding of the jury should be reconciled if this can be reasonably done in the light of the pleadings and evidence. Graham v. Hines (Tex. Civ. App.) 240 S. W. 1015, par. 1; Texas Indemnity Ins. Co. v. Bridges (Tex. Civ. App.) 52 S.W.(2d) 1075, par. 9; Bragg v. Hughes (Tex. Civ. App.) 53 S.W.(2d) 151, par. 3. The plaintiff alleged that the contractor did not use proper materials, workmanship, methods, and processes in constructing the improvements, and that such failure caused the defects in the paving, and the jury so found. There was evidence that at times the contractor used too much oil and at other times not enough. When viewed in the light of this evidence, the verdict should not be construed as finding that at all times the contractor used too much oil and at all times too little oil, but rather that at times too much oil was used and at other times not enough oil. Moreover, the finding of the jury that the defects were due to the use of defective processes, etc., was a finding on the ultimate or controlling issue in the case. The issues as to the particular manner or respect in which the processes as used were defective were evidentiary issues, and the findings of the jury in answer thereto become immaterial. The same thing is true of other alleged conflicts in the verdict.

 The contract provided that, if the paving became defective within said five-year period, the city should notify the contractor of such defects, and that he should have a reasonable time in which to repair same. The appellant complains of the action of the court in admitting in evidence the letter from the city, together with the report of the city engineer specifying the defects in the paving needing repairs, which were sent to the contractor notifying him to repair said defects. These instruments were admissible for the purpose of showing notice to the contractor. The trial court limited the evidence to that purpose. In this there was no error.

The appellant, by numerous bills of exceptions, complains of the conduct of counsel for appellee in the presence of the jury during the trial of the case. It is appellant's contention that counsel for appellee throughout the trial of the cause, by the manner of his interrogation of the witnesses, objections to, and comments on, the evidence, and by side-bar remarks, persistently and consistently attempted to impugn the motives of the defendant and of all those who testified in his behalf, for the fixed purpose of inducing the jury to decide the case on prejudices and hatreds rather than on the evidence. We have ex-

amined the record very carefully in this respect, and have concluded not to reverse the case on account of these alleged errors. We deem it proper, however, to state that we do not approve of the side-bar remarks indulged in by counsel for appellee, nor of the insinuating questions as propounded to the witnesses for the appellant in this case. Under a different state of facts, such conduct might be deemed so prejudicial as to require a reversal of the case.

We have examined all other assignments, and, finding no reversible error, the judgment of the trial court is affirmed.