## SAMUEL D. SALOWITZ ET AL.
*vs.*
## ANTONIO SQUILLACOTE ET AL.

Court of Common Pleas    Hartford County    File No. 40435

MEMORANDUM FILED DECEMBER 9, 1941.

*Harold I. Koplowitz,* of New Britain, for the Plaintiffs.

*Andrew S. Aharonian,* of New Britain, for the Defendants.

KLAU, J. The defendant Squillacote, Jr., is a builder and prior to September 15, 1939, had constructed a brick one-family dwelling with an attached garage on the premises known as No. 60 Eddy Glover Boulevard in the City of New Britain. The plaintiffs, husband and wife, were interested in purchasing the premises as a home for themselves, and after viewing the premises, orally agreed with the defendant Squillacote, Jr., to purchase the property for the sum of $7,900. The total sum of $2,400 was to be paid in cash and the balance paid to the builder from the proceeds of a mortgage which the plaintiffs were to secure upon the premises. The plaintiff husband gave and the defendant builder accepted a check of $50 on September 15th as a deposit towards the purchase price. A further check was given by the purchasers to the defendant Squillacote, Jr., on September 18th in the amount of $740, and a third check in the amount of $1,552.12 was given and accepted on November 15, 1939. The balance of the $2,400 payment was made in groceries valued at approximately $60 which were purchased by the defendant of the plaintiffs.

With the consent of the defendant Squillacote, Jr., the plaintiffs moved into the house on September 26, 1939. At the time the plaintiff husband gave the defendant Squillacote, Jr., the $50 deposit towards the purchase price there were various visible defects in the buildings which the defendant Squillacote, Jr., at the request of the plaintiffs and in consideration of the purchase by them of the premises, agreed to repair.

The plaintiffs did not secure a mortgage upon the premises until December 12, 1939, at which time the defendant Squillacote, Jr., conveyed the property by warranty deed to the

plaintiffs upon the payment of the balance of the purchase price to him. At the same time, this defendant builder executed, for the consideration recited therein, a sealed instrument wherein he guaranteed the buildings on the premises purchased by the plaintiffs "against any and all defects for a period of One (1) year from the date hereof." In the instrument he further agreed and guaranteed to repair and put in working condition the heating system and all connections thereto and to fill in and grade the rear yard as required within a period of not less than 60 days. Otherwise, the owners were authorized to have such work done, the cost thereof to be paid by himself. In the same instrument, the defendant, the Stanley-Svea Grain & Coal Company, guaranteed the undertakings of the builder to the extent of $200.

This written instrument was intended to embody the previous undertaking of the defendant Squillacote, Jr., to repair defects which were in existence at the time the plaintiffs first agreed to purchase the premises, as well as a subsequent written undertaking to the same effect which was executed by the said defendant on November 15, 1939, at the plaintiff husband's request before he would give the said defendant the aforementioned check in the amount of $1,552.12 as a payment towards the purchase price.

The conditions which were in existence in the premises at the time the plaintiffs moved into the house and which were still unrepaired at the time the defendant Squillacote, Jr., executed the aforementioned instrument dated December 12, 1939, were as follows: Plaster cracks in the kitchen ceiling and wall; in the downstairs lavatory wall; in the dining room at the jointure of the ceiling and wall, and on one of the walls of that room; in the wall of the vestibule; in a corner of the upstairs hallway; in a second-floor bedroom; in the ceiling of the second-floor bathroom; and in the linen closet. In addition, there was insufficient mortar in the joints of the tile of the fireplace hearth in the living room, as well as in the wall tile of the second-floor bathroom at the jointure with the floor. The bricks forming the outside chimney, as well as the bricks on the left wall of the building, lacked sufficient mortar in the joints and needed pointing. The nails in the casing in the rear door to the kitchen were neither set nor puttied over and the gutters of the garage roof, as well as the joints of the outside wood cornices, were open. The kitchen cabinets were not securely fastened to the wall.

The defendant builder did undertake, between December 12, 1939 and December 12, 1940, to repair the cracks in the kitchen ceiling by cutting open the crevices, filling them with plaster of paris and covering the entire ceiling with two thin coats of sanding finish. He cut out the cracks in the kitchen wall, in the downstairs and upstairs lavatory and attempted to repair them in the same manner but did not repaint the walls, thus leaving them in a streaked condition. The plaster of paris itself continued to fall out of the crevices. He also repaired the front gutter of the garage by installing a new and larger one but the gutter was not secured in a workmanlike manner to the garage structure.

The defendant Squillacote, Jr., in his pleadings, denied all of the allegations of the plaintiffs' complaint and filed a counterclaim claiming rent from the plaintiffs in the amount of $60 for a period of one and one-half months during which time the plaintiffs occupied the premises without payment of the full amount of the purchase price, and by way of special defense, pleaded in substance an accord and satisfaction entered into with the plaintiffs.

During the trial, the defendant Squillacote, Jr., made the claim, first, that there was a lack of consideration for the undertaking entered into by him on December 12, 1939, and further claimed that all of the conditions of which the plaintiffs complain are due to natural causes arising from the shrinkage of materials and the settlement of the building. The plaintiffs' claim is that these conditions and results arise from faulty workmanship and materials used in the construction of the building by the defendant Squillacote, Jr.

With respect to the claim of the defendant that there was a lack of consideration to support his promise, it is questionable whether, under a plea of a general denial, he could raise the issue of consideration. While consideration is an essential element to be proven by the plaintiff, the lack of consideration should be specially pleaded where the defendant does not intend to ·deny the execution of the instrument by himself. *Masline vs. New York, N. H. & H. R. Co.,* 95 Conn. 702, 710. But even if the defendant is entitled to raise the question of consideration under his plea of a general denial, he cannot prevail on this issue. The instrument executed by the defendant on December 12 was an instrument under seal. *Caputo vs. DiLoretto,* 110 Conn. 413, 416.

It, therefore, purported a consideration and while parol evidence is admissible to show its actual consideration, the legal effect of the instrument cannot be nullified by proof that no actual consideration passed. *Wonski vs. Lukomske*, 118 Conn. 635, 640; *Hartford-Connecticut Trust Co. vs. Devine*, 97 id. 193, 195. Finally there can be no question that the plaintiffs furnished actual consideration for the undertaking entered into by the defendant because the instrument integrated all antecedent agreements of the parties, for which antecedent agreements there was actual consideration in the promise and performance of that promise made by the plaintiffs to purchase the premises of the defendant.

The dispute between the parties, therefore, resolves itself into a question as to the construction to be given to the undertaking of the defendant Squillacote, Jr., as expressed in the written instrument executed by him on December 12, 1939.

The conditions of which the plaintiffs complain are denied by the defendant to be defects within the meaning of the term as used in the written instrument of December 12, 1939. The language used by the defendant in that instrument is as follows: "I do hereby guarantee the buildings on said premises against any and all defects for a period of One (1) year from the date hereof...."

The language appears to be ambiguous. What is the meaning of the word "guarantee?" What is the meaning of the word "defects?" Does the word "defect" mean any imperfection arising from any cause whatsoever or does it mean results or conditions arising from faulty construction through improper workmanship and materials? There is authority that an undertaking by a contractor in such language imposes a liability upon him even though the failure was not caused by defective materials or workmanship. *City of Lake View vs. MacRitchie*, 134 Ill. 203, 25 N.E. 663; *Town of Milford vs. O'Neil Bros., Inc.*, 8 Conn. Sup. 403, 414. But the language is to be construed in the light of the circumstances under which the agreement was entered into and in the light of the understanding and intent of the parties at the time the instrument was executed. *Bronx Derrick & Tool Co. vs. Porcupine Co.*, 117 Conn. 314, 318; *Finlay vs. Swirsky*, 103 id. 624, 635; *New Haven Sand Blast Co. vs. Dreisbach*, 102 id. 169, 180; *Volk vs. Volk Mfg. Co., Inc.*, 101 id. 594, 600, 601. Applying these tests, the language is to be con-

strued as a warranty on the part of the defendant that the workmanship was good and the materials used by him in the construction of the building were proper and would stand the test of the operation of natural forces reasonably to be anticipated for a period of one year.

In addition to this express warranty of the defendant Squillacote, Jr., and in the light of the circumstances under which the agreement was executed, a further promise by him must necessarily be implied that he would repair defects, that is, results or conditions arising from faulty construction by him of the building either in workmanship or materials, which were in existence at the time the agreement was executed. *Lakitsch vs. Brand,* 99 Conn. 388, 394; *Rockwell vs. New Departure Mfg. Co.,* 102 id. 255, 287. Such a promise must be necessarily implied; otherwise we would be faced with the conclusion that the plaintiffs obtained no protection under the instrument except for the promises contained in the instrument to repair the heating system and to fill in and grade the rear yard. Such a conclusion of the construction to be placed on the terms of the instrument would be manifestly unfair and unjust. All of the conditions of which the plaintiffs complain were already in existence and the conduct of the defendant builder in repairing some of these conditions already in existence indicates the construction which he placed upon his obligations under the instrument.

In fulfilling his obligation to repair existing defects, the defendant was under a duty to repair them in workmanlike manner. Cutting out cracks of plaster and filling them with plaster of paris without providing a base for the plaster to adhere to, such as metal lath, or some such other material, and without restoring the entire walls to a harmonious condition with respect to color is not a performance in a workmanlike manner.

The defendant Squillacote, Jr., entered into a broad undertaking. He not only warranted that the buildings would be free from any and all defects for one year but he agreed to repair all defects which were in existence at the time he executed the instrument. To sell the premises he made construction of the building in a proper and workmanlike manner the test of his obligation, and since by the proper use of materials and by proper workmanship the results complained of by the plaintiff would not have appeared, the defendant

Squillacote, Jr., cannot be permitted to attribute these consequences to natural causes. Natural forces, such as shrinkage and settlement, operating on the buildings as they actually were constructed may have produced these consequences but the consequences arose from faulty workmanship and materials actually involved in construction which were unable to resist the forces of nature.

The damages which the plaintiffs are entitled to recover are the reasonable cost of repairing these defects in a workmanlike manner. The reasonable cost of repairing these defects amounts to $511. The construction of the front door threshold did not constitute a defect in the premises. The defendant Squillacote, Jr., further agreed to repair and put in working condition the heating system and all connections thereto. The plaintiff has produced no evidence as to what it would cost to repair the heating system to eliminate the complaint which he makes with respect thereto. The defendant further agreed to fill in and grade the rear yard within a period of 60 days, which undertaking he failed to perform. The plaintiffs expended the sum of $48.85 for loam, seed and labor to grade the entire premises including the front yard. It is impossible to estimate with reasonable certainty what portion of this sum was expended for labor and materials for the rear yard and, therefore, damages for this item cannot be determined.

With respect to the counterclaim of the defendant, the evidence is clear that the defendant allowed the plaintiffs to move into the premises upon the payment of a deposit towards the purchase price; that the parties contemplated the mortgage would be secured within a short time; and that until a mortgage was secured, the plaintiffs were to occupy the house as owners and not as tenants. No agreement was entered into between them nor can any be reasonably implied with respect to the payment of rent by the plaintiffs to the defendant Squillacote, Jr., during the interval between the plaintiffs' moving into the house and their securing of the mortgage.

The issues on the complaint and on the counterclaim are found for the plaintiff.

The defendant, the Stanley-Svea Grain & Coal Company, did not file an appearance or participate in the trial and a judgment by default shall enter against that defendant.

Judgment may be entered for the plaintiffs to recover the sum of $200 and costs against both defendants and the additional sum of $311 against the defendant, Antonio Squillacote, Jr.